EUGENE FRANKLIN, Appellant, v. HUME CONSOLIDATED SCHOOL DISTRICT et al.

Division Two, July 16, 1917.

1. **TRIAL THEORY:** Illegal Vote at Election: Evidence. In a proceeding to invalidate certain school bonds brought by a taxpayer against the district, where all parties, including the court, tried the case on the theory that inquiry could not be made into the question of who were legal voters at the election at which the proposition to issue bonds was determined, the plaintiff on appeal cannot complain of the exclusion of evidence offered for the purpose of showing that a certain person who voted at said election was not a legal voter.

2. **ILLEGAL VOTE:** Exclusion After Having Been Placed in Ballot Box. The judges of election after having received and placed in the ballot box the ballot of an illegal voter and after having counted it against the proposition voted on, have a right to throw it out and deduct it from the total vote on the proposition, even if they thereby change the previously announced result.

3. **ISSUE OF BONDS:** Assent of Two-Thirds of Voters: Meaning. The provision of section 12 of article 10 of the Constitution, pertaining to the issuing of bonds by a school district and requiring "the assent of two-thirds of the voters thereof voting at an election to be held for that purpose," means two-thirds of those voting on the proposition, and not two-thirds of the ballots cast at the annual school election. So that where 214 ballots were cast at the annual school election, and 204 voted for the proposition to issue bonds and there were 136 for said proposition and 68 against it, two-thirds voted "for that purpose."

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*James A. DeArmond* and *Smith & Chastain* for appellant.

(1) The court erred in receiving evidence over plaintiff's objection tending to show that Joe Thorn, who voted at the election in question, was not a legal voter. (a) Because there was no evidence even tending to show that he voted "against the loan." (b) Because no question was ever raised by the officers of the election as to his qualifications as a voter, and his vote had been received, counted and certified by the officers of the election. (2) The court erred in holding that the evidence showing the publication of the result of this election in the local newspaper was not competent. It tended to show what was the result proclaimed as provided by the statute. R. S. 1909, sec. 5910 and sec. 10879. (3) The court erred in refusing to permit plaintiff to prove that Carl Palmer, who voted at this election "against the loan" and whose vote was received and so counted by the election officials and afterwards was thrown out after it was by them ascertained that by so doing the result of the election would be shown to be changed, was in fact a legal voter

there when he cast his ballot. R. S. 1909, secs. 5818, 5900, 5905, 5908, 5909 and 10879; 10 Am. & Eng. Ency. Law, p. 706; Heidelberg v. St. Francois County, 100 Mo. 69; Hopkins v. Swift, 37 S. W. 155. (a) The judges having once passed upon Palmer's qualifications to vote and having received his ballots and placed them in the box, whatever judicial functions they may have had as to this vote was then *functus officio*. Bowen v. Hixon, 45 Mo. 340. (b) Defendants having been permitted to prove over plaintiff's objections what they claimed were the statements of Palmer as to his residence and right to vote, if these were material, as the court held, plaintiff should have been permitted to introduce the testimony of Palmer tending to disprove that affirmative testimony, and showing just what he did say, and this the court denied to plaintiff. (4) The six defendants, directors of defendant school district, along with the three judges and two clerks of the election were charged with fraud in the matter of throwing out the vote of Palmer, thus changing the result of the election as certified, none of whom, save one judge of election and one school director went upon the witness stand. The facts were peculiarly within their knowledge. Hence the inference will be indulged that the charge is true. Mabary v. Mc-Clurg, 74 Mo. 575; Baldwin v. Whitcomb, 71 Mo. 651; Strolmeyer v. Zeppenfield, 28 Mo. App. 268; Ins. Co. v. Smith, 117 Mo. 294; Stephenson v. Kilpatrick, 166 Mo. 262; Henderson v. Henderson, 55 Mo. 559. (5) This inference is authorized by the erasure of a vote tallied, changing the total as extended, the failure to certify the returns for thirteen days after the election when required to do so within two days and the admitted refusal of plaintiff's request to see the records. R. S. 1909, sec. 5911 and sec. 10879. (6) Palmer being a legal voter as plaintiff offered to prove and his votes having been received and deposited in the ballot box and counted on all four propositions voted on there, though his ballot on this one proposition was afterwards thrown out by the judges, in an equitable proceeding, as is this, the certificate or return of the election may be impeached for fraud

and the real facts ascertained and determined. McCrary on Elections, sec. 458, p. 290; 15 Cyc. 376 (3); Riggs v. Stephens, 17 S. W. 1016; Neiser v. Thomas, 99 Mo. 229; Taber v. Wilson, 34 Mo. App. 96; Louisville v. Park Court, 65 S. W. 860; State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Trust Co., 261 Mo. 448; People v. Wiant, 48 Ill. 263; Boven v. Smith, 47 Ill. 485; Powell v. Holman, 50 Ark. 85; Hopkins v. Swift, 37 S. W. 155. (7) There were not two or more elections as defendants claimed, but only one, at which there were submitted to the voters, and upon which they voted, four propositions at this annual school meeting. State v. Bechel, 34 N. W. 342; In re Denny, 59 N. E. 362; In re Davis, 61 Pac. 811; Bryan v. Lincoln, 70 N. W. 252; In re County Seat, 15 Kan. 500; McCrary on Elections (2 Ed.), sec. 163. (8) Under section 12, article 10, of the Constitution of Missouri, the proposition to incur the debt and to issue the bonds was not carried at the election by the required two-thirds majority of all the votes cast at the election even if it were conceded that the Palmer vote was illegal or that the question of whether or not his vote should have been counted "against the loan" was to be determined alone by the second returns made by the judges and clerks of this election. 10 Am. & Eng. Ency. Law (2 Ed.), p. 754; 15 Cyc. 390; State ex rel. v. Winkelmeir, 35 Mo. 103; State ex rel. v. Brassfield, 67 Mo. 331; State ex rel. v. Mayor, 73 Mo. 435; State ex rel. v. Francis, 95 Mo. 51; State ex rel. v. McCowan, 138 Mo. 193-4; State ex rel. v. White, 162 Mo. 535; State ex rel. v. Burns, 195 Mo. 251; School District v. Oellien, 209 Mo. 468; State ex rel. v. Kansas City, 233 Mo. 188; State ex rel. v. Wilson, 129 Mo. App. 242; Bauch v. Cabool, 165 Mo. App. 486; State ex rel. v. Sutterfield, 54 Mo. 396-7; Stebbins v. Judges, 66 N. W. 594; Chestnutwood v. Hood, 68 Ill. 132; Knight v. Shelton, 134 Fed. 423; Green v. State Board, 5 Idaho, 130; State v. Grace, 20 Ore. 154; Walker v. Oswald, 68 Md. 146. (9) The "assent" by the majority of the voters voting at the election as required under section 12 of article 10 of the Constitution of Missouri, is an affirmative as opposed to a passive

agent. State v. Brassfield, 67 Mo. 339; State ex rel. v. Kansas City, 233 Mo. 189; State ex rel. v. Wilson, 129 Mo. App. 242; Hawkins v. Carroll, 50 Miss. 735; Mason v. Moore, 73 Ohio St. 275; Knight v. Shelton, 134 Fed. 423.

*J. A. Silvers, J. B. Bryant* and *Silvers & Silvers* for respondents.

(1) The election judges not only had authority to reject the ballot of Palmer at the time of the count; but it was their duty, at any time before certifying and making return of the result of the election, to reject the ballot of any voter whom they found, upon investigation, to be not qualified. Hehl v. Guion, 155 Mo. 79. (2) Under the Constitution, the assent necessary to authorize the issue of bonds is that of two thirds of the voters voting on the proposition. A reasonable construction of the provision, and one which is supported by authority in states where the question has been determined, is that the assent required is the assent of two thirds of those who vote for that purpose. That the adoption or rejection of the bond proposition is to be determined by the result of the election in so far as it is an election for that purpose. The States of Kentucky and Washington have identical constitutional provisions (save that in the latter state the majority required is smaller). In both those states the Supreme Courts have held that, where the bond issue is voted upon at the same election as are other propositions, the result as to the bond issue is determined by the number of votes cast on that particular proposition. Worthington v. Board of Education, 71 S. W. (Ky.) 879; Montgomery County Court v. Trimble, 47 S. W. (Ky.) 773, 42 L. R. A. 738; Board of Education v. Winchester, 120 Ky. 591; Fox v. Seattle, 86 Pac. (Wash.) 379. The foregoing cases go into the question thoroughly and are conclusive. They have been followed by later cases, to-wit: Metcalf v. Seattle, 25 Pac. (Wash.) 1010; Frost v. Central City, 120 S. W. (Ky.) 367; Russell's Admr. v. Railroad, 124 S. W. (Ky.) 840; Inglehart v. Dawson, 136 S. W. (Ky.) 210; Marion v.

Haynes, 164 S. W. (Ky.) 79; Fowler v. Oakdale, 166 S. W. (Ky.) 195. The constitutional provision here under consideration can not be said to fall within the first class mentioned by this court in State ex inf: v. Kansas City, 233 Mo. 188. The two thirds required is not two thirds of all the voters of the municipality. But it is two-thirds of those voting. Yet it does not fall within the second class specified by this court in that case; for the majority required is not two-thirds of those voting at any general election. It evidently falls within the third class mentioned in that case; for the majority here required is two-thirds of the voters voting, at an election held for that purpose. Certainly this can mean nothing except that a two-thirds of the voters who vote for that purpose, or upon the proposition, is sufficient to carry it. It has so been construed by the legislative branch of our state government. The Act of the Legislature approved March 30, 1911, says: "And if two-thirds of the votes cast on the proposition shall be 'for the loan,' the district board shall be vested with the power to borrow money." Laws 1911, p. 395. (3) The nine ballots which were defaced, or mutilated or not scratched either for or against the loan, were not votes. The voters who deposited such ballots were rightly considered as not voting. It was the same as though they had not attended the election. And where the assent required is of those voting, voters casting such ballots cannot be counted either for or against the proposition. City v. Kew, 132 Pac. (Cal.) 780. (4) The court cannot go behind the official return of the judges of election and enter into the question of whether they rightly determined the qualifications of a voter. State v. Gamma, 149 Mo. App. 700; State ex rel. v. Kerens, 180 Mo. App. 355. (5) Such was the position assumed by the plaintiffs at the trial. Appellants cannot switch theories of the case, adopting a different theory on appeal from that adopted at the trial. "A case cannot be tried upon one theory below, and tried upon another and different theory here." Huss v. Bakery Co., 210 Mo. 52; St. Louis v. Contracting Co., 210 Mo. 491. The statute does not require publication of the

election result in a newspaper. No official publication was made. If the newspaper said anything about it, the item was merely one of news. Nothing purporting to be an official announcement was offered. Surely statements in a newspaper are not admissible as evidence, any more than other hearsay.

ROY, C.—This is a proceeding to invalidate certain school bonds. There was a judgment for defendants, and the plaintiff has appealed.

On April 4, 1916, a proposition to issue $20,000 in bonds of the above-named school district for building purposes was legally submitted at the annual school election. There were 214 ballots cast at this election, of which 204 voted on said proposition, 136 being in favor of same. The judges first counted 69 votes against the proposition and announced that the proposition was lost, such result being subsequently published in the local paper. On the same day, and before leaving the polling place, the judges of the election interrogated Carl Palmer who had voted against the proposition in regard to the period of his residence in the district, and got such other information as they could at the time and decided that Palmer had not been a resident of the district for sixty days and that he was not a legal voter. They erased the figures "69" on the tally sheets as the total vote against the proposition and in place thereof wrote the figures "68," having first ascertained that Palmer had voted against the proposition. The judges at once certified the returns of that election as to all matters except as to the vote on that proposition. As to the proper course to pursue in reference to the vote on said proposition as it involved the Palmer vote, they called for advice from the office of the Attorney-General and from local counsel, and, on April 17, 1916, certified the vote on the said proposition as 136 for and 68 against the same. Whereupon the bonds were duly prepared and have been contracted to the defendant, the Fidelity Trust Company, their delivery being held up awaiting the result of this suit.

The plaintiff herein is a resident taxpayer in said district. On the trial counsel on both sides and the court proceeded on the theory, by them stated to be the law, that the question as to who were legal voters at that election could not be tried in this case. However, both sides offered evidence on the question as to the competency of certain ones who had voted at that election. The court heard some of the evidence and excluded some. The plaintiff offered evidence tending to prove that Carl Palmer was a legal and competent voter at that election, but, on the objection of defendants, the evidence was excluded.

It is conceded that Mr. Bryant, a member of the school board, and its legal adviser, advised Mr. Adams, the school district clerk, not to let Mr. Franklin see the school records showing the proceedings in controversy, and the clerk, pursuant to such advice, refused to let Mr. Franklin see such records. No reason was given for such refusal, and there is nothing to show that such refusal was for improper purposes, and there is no dispute as to the relevant facts in this case. There is no evidence in the case tending to show any fraudulent intent on the part of any one in connection with the matter.

I. Plaintiff has no right to complain of the exclusion of the evidence offered for the purpose of showing that Carl Palmer was a legal voter. All parties, including the court, tried the case on the theory that **Trial Theory.** such an inquiry could not be made in this case. The case must be decided here on the same theory as that on which it was tried by the parties below. [Huss v. Bakery Co., 210 Mo. l. c. 52; St. Louis v. Wright Con. Co., 210 Mo. 491.]

II. Appellant contends that the judges of the election, after having received Palmer's ballot and placed it in the box, and after counting it against the proposition, had no right to throw it out, and deduct it **Excluding Illegal Vote.** from the total vote against the proposition. It has been held that the judges do have the right to exclude an illegal ballot after it has

been received unchallenged and placed in the ballot box. [Hehl v. Guion, 155 Mo. 76.] The·mere fact that it has been marked on the tally sheet against the proposition does not deprive the judges of election of the power of revising their work in accordance with the facts as determined by them.

III. It is claimed that 136 votes for the proposition is not two-thirds of the total of 214 voting at such election. It is exactly two-thirds of those voting on that proposition, and we think is sufficient to au-

Two-Thirds of Voters.

thorize the issuing of the bonds. Section 12 of article 10 of our State Constitution requires "the assent of two-thirds of the voters thereof voting at an election to be held for that purpose." That section, in the respect now under discus-' sion has never been construed. Similar provisions in the States of Kentucky and Washington have been construed by the courts of those states as meaning that the result is to be determined by the number of votes cast on the particular proposition.

In Montgomery County Fiscal Court v. Trimble, 104 Ky. 629, a similar provision of the constitution of that state was held to require only two-thirds of the votes of those voting on the proposition. That case overruled three prior cases and has been followed in frequent cases since. [Board of Education v. City of Winchester, 120 Ky. 591; City of Marion v. Haynes, 164 S. W. (Ky.) 79; Fowler v. City of Oakdale, 166 S. W. (Ky.) 195.]

In Fox v. City of Seattle, 86 Pac. (Wash.) 379, it was said:

"The Constitution, it will be noted, does not provide for either general or special elections so termed, but provides only for an election to be held for that purpose, and that purpose, of course, is a special purpose. The provision in the charter that such proposition shall have then received the assent of three-fifths of the voters voting at such election construed with reference to the constitutional provision, evidently means three-fifths of the voters who are expressing an opinion on the question

271 Mo.—38

discussed in the ordinance; and the question discussed in the ordinance was the question of the loan and the issuance of the bonds.''

The Constitution must be so construed as to give effect to all its terms. If it be construed to mean two-thirds of all votes cast at an election where other matters are voted upon, then the words ''for that purpose'' are, in effect, stricken out of the Constitution.

The judgment is affirmed.

*White, C.,* concurs.

PER CURIAM:—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All of the judges concur.