THE STATE ex inf. JOHN EWING, Prosecuting Attorney of Worth County, ex rel. OLIVER LONG et al., Appellants, v. SHERIDAN CONSOLIDATED SCHOOL DISTRICT and CHARLES T. McLAUGHLIN et al., Directors.

Division One, July 30, 1925.

1. **CONSOLIDATED SCHOOL DISTRICT:** Disorganization: Number of Voters. Under the statute (Sec. 11242, R. S. 1919) the number of voters necessary to disorganize a consolidated school district is two-thirds of the whole number of qualified voters and taxpayers who reside in the district, and not simply two-thirds of such voters as are present and vote on the proposition at a legal election, unless those who vote for dissolution are two-thirds of all the legal voters who are resident taxpayers of the district. Where the

Vol. 310]     APRIL TERM, 1925.     259

State ex inf. Ewing v. Sheridan Consolidated School District.

whole number of resident taxpayers in the consolidated school district who were qualified voters was 500, and at a legal election 160 of such voters voted for disorganization and 42 against it, there was no legal dissolution of the district.

2. ———: ———: **Section 11242: At Such Meeting.** Section 11242, Revised Statutes 1919, providing that any consolidated school district shall be privileged to disorganize or abolish such organization "by a vote of the resident voters and taxpayers of such school district" at a legally held public meeting, "and at such meeting, if two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve any such . . . · consolidated district, then from and after that date the said . . . consolidated school district shall be dissolved," means that two-thirds of the resident voters and taxpayers of the district, and not simply two-thirds of those present and voting on the proposition to dissolve, if less than two-thirds of the whole number in the district, is necessary to dissolve or disorganize the district. The words "at such meeting," etc., refer to the time and place of ascertaining whether two-thirds have voted to dissolve, and do not affect the number necessary to dissolve.

3. **STATUTES: Inconvenient Results.** Inconvenient and oppressive results cannot control the construction of an unambiguous statute.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 340, p. 945, n. 27 New. Schools and School Districts, 35 Cyc. p. 858, n. 41.

Appeal from Worth Circuit Court.—*Hon. John M. Dawson,* Judge.

AFFIRMED.

*Du Bois & Miller* for appellants.

(1) A two-thirds majority of the qualified voters, voting at the public meeting, legally held for that purpose, was all the law required to dissolve said Sheridan Consolidated School District, and a vote of 164 votes for dissolution to 42 votes against dissolution legally dissolved said school district. State ex rel. v. Setterfield, 54 Mo. 396; 20 C. J. p. 205, secs. 265, 266; State ex rel. Bassett v. Mayor, 37 Mo. 270; Richardson v. McReynolds,

114 Mo. 649; Lichen v. McKay, 131 Mo. App. 728; State ex rel. v. Kansas City, 233 Mo. 162; Franklin v. School District, 271 Mo. 593; State ex rel. v. Orear, 277 Mo. 311; Munns v. Hackman, 283 Mo. 477; School District v. Oellion, 209 Mo. 464; Bauch v. Cabool, 165 Mo. App. 500; State ex inf. Barrett v. Clements, 305 Mo. 297. (2) No ambiguous statute shall be construed in such a manner as to be inconvenient or against reason, and to construe Sec. 11242, R. S. 1919, so as to require a two-thirds majority of all the resident voters and taxpayers of said school district, whether voting or not at such meeting, leads to ppressive and absurd consequences. The presumption is the Legislature intended no such anomalous results. 36 Cyc. 1108; Fanny v. State, 6 Mo. 83; Hilgert v. Barber Paving Co., 107 Mo. App. 393; Meneff v. Taulman, 159 Mo. App. 322; St. Louis v. Christian Bros. College, 257 Mo. 552; Kane v. Railroad, 112 Mo. 34; Bowers v. Smith, 111 Mo. 45; Chaulaw v. Railroad, 122 Mo. 375; State ex rel. v. Slover, 126 Mo. 652; Verdin v. St. Louis, 131 Mo. 26; State ex rel. v. Turner, 141 Mo. App. 323; State ex inf. v. Talty, 166 Mo. 529; Westerman v. K. P. Lodge, 196 Mo. 670.

*Ed Kelso* and *Chas. H. Mayer* for respondents.

The statute in question and the adjudicated cases require that two-thirds of the resident voters and taxpayers of such district shall vote for the dissolution of a consolidated school district before such dissolution can be effected. R. S. 1919, sec. 11242; State ex inf. Barrett v. Clements, 305 Mo. 297; State ex inf. Mueller v. Fry, 300 Mo. 550; State ex inf. Thompson v. Bright, 298 Mo. 355; State ex rel. Muns v. Hackmann, 283 Mo. 477; School District v. Oellien, 209 Mo. 464; State ex rel. v. White, 162 Mo. 533; State ex rel. v. Kansas City, 233 Mo. 162; State ex rel. v. Brassfield, 67 Mo. 331.

LINDSAY, C.—The decision in this case depends entirely upon the construction to be placed upon Sec-

tion 11242, Revised Statutes 1919. The proceeding is by *quo warranto,* and the information challenges the legality of the corporate existence of Sheridan Consolidated School District No. 1, and the right of the individual defendants to exercise the office of directors of such district. The cause was submitted to the court upon the pleadings and upon an agreed statement of facts. It is conceded that the Sheridan Consolidated School District No. 1 was duly organized as a consolidated school district, composed of the territories of certain common school districts of Worth County and Nodaway County, under and as the result of an election held on the 14th day of June, 1921, in accordance with the provisions of the statute. The individual defendants were directors, or their successors, elected pursuant to said organization. On March 24, 1923, an election was held under the provisions of Section 11242, to vote upon the question of disorganization of said Sheridan Consolidated School District No. 1.

It is conceded that proper notice of said meeting was given, and that all formalities required by law, precedent to and subsequent to such meeting, were complied with; that at said time there were 500 qualified resident voters and taxpayers in said district; that at the meeting called for the purpose of disorganizing said district there were cast by qualified voters and taxpayers of said district, for disorganization of said districts, 160 votes, and against disorganization, 42 votes. The sole question here for determination is whether the number of votes required to disorganize such district is two-thirds of the total number of qualified voters and taxpayers in the district, or, two-thirds only of those voting at the meeting or election called to disorganize. The determination of that question as has been said, rests upon the meaning which must be given to Section 11242. The circuit court rendered judgment in favor of the defendants.

In accordance with what has been stated, we lay aside as not requiring more than this passing reference, certain authorities cited by counsel for appellants upon

the subject of *quo warranto* being the proper form of remedy, and also upon the question that in this form of remedy the procedure follows the rule of procedure in civil cases. There is no issue made by defendants as to those matters. The essential contention of appellants is that a two-thirds majority of the qualified voters voting at the meeting legally held was all the law required to disorganize the district. If that contention is sound, the vote of 164 for disorganization, as against the vote of 42 who voted against disorganization, accomplishes a dissolution of the district.

Numerous cases are cited wherein the like question arose upon provisions of the Constitution or of statutes, or of municipal charters. Among these are State ex rel. v. Sutterfield, 54 Mo. 391; State ex rel. Bassett v. Mayor of St. Joseph, 37 Mo. 270; Tucker v. McKay, 131 Mo. App. 728; State ex inf. v. Kansas City, 233 Mo. 162; Franklin v. School District, 271 Mo. 585; State ex rel. v. Orear, 277 Mo. 303; State ex rel. Muns v. Hackmann, 283 Mo. 469; School District v. Oellien, 209 Mo. 464; Bauch v. Cabool, 165 Mo. App. 486; State ex inf. Barrett v. Clements, 305 Mo. 297.

In some of these cases it was plain that the provision involved required a majority of three-fifths or of two-thirds of all the qualified voters of the district or political subdivision concerned. In others, it was plain that only the required majority of those voting at the election was necessary. In others, the question has been one requiring close analysis of the particular provision. In each instance it is the language of the particular provision which must govern, because there is little of uniformity of expression, but, on the contrary, there is an "infinite variety."

Decisions are authoritative when they deal with the form of expression equivalent, or closely conformable, to that which forms the subject of inquiry in a case to be determined. In our view of the instant case and of the statutory provision here involved, no general review of decisions is demanded. There are two which settle

conclusively the construction which must be given to Section 11242. That section was under consideration in a like proceeding in State ex inf. Barrett v. Clements, 305 Mo. 297, as original proceeding in Court in Banc. In that case, however, the controversy was waged over questions of fact, and presumptions to be indulged, arising upon the evidence shown by the report of the commissioner, who took the testimony. There was no controversy over the meaning of Section 11242. In the majority opinion it was said at page 303: "The parties are in agreement (and such is our view) that the statute requires that two-thirds of all the taxpaying voters residing in the consolidated district vote for such disorganization, and that it is not sufficient that two-thirds of those present at the meeting and having such qualifications vote for such disorganization. [See State ex inf. Major v. Kansas City, 233 Mo. 1. c. 189, and cases cited thereat.]"

There was a dissenting opinion by Judge Woodson, but his dissent was based solely upon questions of fact. He expressly concurred in the construction given in the majority opinion, by Judge D. E. Blair, as to the meaning of Section 11242. After quoting the material parts of that section, Judge Woodson said, at page 318: "This statute does not simply require a two-thirds vote of the resident voters and taxpayers of the district voting at the election to dissolve the district, but two-thirds of all the resident voters and taxpayers thereof to so vote in favor of the dissolution, before it can be dissolved. This has been the uniform ruling of this court construing similar statutes and constitutional provisions."

The majority and dissenting opinions in that case, therefore, state the view held by Court in Banc as to the requirements under this section. Beyond that, the decision in School District v. Oellien, 209 Mo. 464, is equally authoritative because it is based upon a statute carefully analyzed by Judge Graves, who wrote the opinion, and which in the particular here under consideration is es-

sentially the same as the provision in Section 11242. In the opinion in that case it was said, l. c. 468:

"This action is bottomed upon the last clause of Section 9772, Revised Statutes 1899, which reads: 'And whenever a majority of the qualified voters and taxpayers of any school district, at any annual or special meeting called for that purpose, shall determine that it is necessary to have additional grounds for school purposes, then the board of directors may proceed to condemn and pay for any amount of land adjacent to the schoolhouse site, as provided in this section.'

"In fact there is no authority in law for the condemnation of additional land adjoining a schoolhouse site, other than the statute hereinabove set out. The numerous allegations of the petition in question show an attempt, at least, to comply with the statute. The first and vital question to be determined is the meaning of the words 'majority of the qualified voters and taxpayers of any school district,' in the connection in which it is used. Do these words in this connection mean a majority of all the qualified voters and taxpayers of the district, whether present or absent at the time the vote is taken, or do they mean a mere majority of such qualified voters and taxpayers as are present at the time or meeting where the proposition is voted upon and determined? We think these words in the connection used mean that the proposition must receive a majority of all the qualified voters and taxpayers of the district, and that a mere majority of all those present, unless it also be a majority of all the qualified voters and taxpayers of the district, is insufficient. It will be noticed that between two commas, the following phrase is thrown in, 'at any annual or special meeting called for that purpose.' If this phrase were left out there would be no question, for the clause would then read: 'Whenever a majority of the qualified voters and taxpayers of any school district . . . shall determine,' etc. To our mind the phrase omitted refers to the time and place when and where the fact whether or not a majority of the qualified voters

and taxpayers of the district are in favor of the proposition shall be ascertained and that it was not intended to so modify the word 'majority' as first used, so as to make it mean a mere majority of those present at the time and place indicated by the omitted phrase. It is quite clear that the legislative intent was to require the assent of a majority of all the qualified voters and taxpayers before the district could be subjected to the expense and damages resulting from a condemnation proceeding. By the phrase last above omitted from our quotation, it was intended to fix a time and place for procuring this assent, i. e., either at an annual meeting or at a special meeting called for that purpose.

"It was not intended by the Legislature that, if there were only three present out of forty voters and taxpayers, the majority of those present at such meeting could fix this burden upon the school district. If such had been the intent it could have been easily and plainly expressed by saying that the result should be determined by a majority of those present and voting at such meeting."

In comparison with the statute involved in that case, we set out Section 11242, Revised Statutes 1919: "Any town, city or consolidated school district heretofore organized under the laws of this State, or which may be hereafter organized, shall be privileged to disorganize or abolish such organization by a vote of the resident voters and taxpayers of such school district, first giving fifteen days' notice, which notice shall be signed by at least ten qualified resident voters and taxpayers of such town, city or consolidated school district; and there shall be five notices put up in five public places in said school district. Such notices shall recite therein that there will be a public meeting of the resident voters and taxpayers of said school district at the schoolhouse in said school district, and at said meeting, if two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve any such town, city or consolidated school district, then from and after that date

266    SUPREME COURT OF MISSOURI,

State ex inf. Ewing v. Sheridan Consolidated School District.

the said town, city or consolidated school district shall be dissolved, and the same territory included in said school district may be organized into a common school district under Article III of this chapter." The foregoing analysis of Section 9772, Revised Statutes 1899, applies directly and authoritatively to Section 11242, Revised Statutes 1919. The last-named section, after reciting the conditions precedent to the holding of the meeting, continues, saying: "And, *at said meeting,* if two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve, etc." The phrase, "at such meeting" refers to the "time and place, when and where, the fact whether or not" two-thirds of the resident voters and taxpayers of such school district shall vote to dissolve. If the phrase "at said meeting" were transposed, so that the reading would have been "if two-thirds of the resident voters and taxpayers of such school district at said meeting shall vote to dissolve," then, it would be plain that a majority of two-thirds of only those voting at the meeting, was required; but, as the sentence is framed, it plainly means that at said meeting it is necessary that two-thirds of the resident voters and taxpayers—that is two-thirds of the total number of resident voters and taxpayers of the district—must vote to dissolve in order that the disorganization of the district may be effected.

There is the suggestion in the brief of counsel for appellants that no ambiguous statute shall be construed in such manner as to be inconvenient, or against reason, and that to construe Section 11242 as we do would lead to oppressive and absurd consequences, through the difficulty of getting the required number of voters to attend the meeting. The cases cited under this point, we think, have no persuasive effect, because, first, Section 11242 is not ambiguous; and again, being clear in its requirement, the question of whether it leads to oppressive or inconvenient results, is one to be considered by the Legislature, and not by the courts.

In view of the conclusions reached, the judgment must be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LIND-SAY, C., is hereby adopted as the opinion of the court. *Ragland, P. J., Graves* and *Atwood, JJ.,* concur.