## J. T. BONEY et al. v. J. COOPER SIMS et al., Appellants.

Division One, June 25, 1924.

1. **ELECTION: Count of Ballots: Equity Jurisdiction.** The result of an election as declared by the election officials cannot be re-examined by a court of equity. The remedy is one which must be provided by legislative enactment, and is one to be pursued only in accordance with the method so provided. [Following State ex rel. Wahl v. Speer, 284 Mo. 45.]

2. ———: ———: ———: **Injunction by Taxpayers.** A court of equity cannot entertain an injunction suit to restrain and enjoin a school board from issuing bonds authorized at an election, on the ground that the judges and clerks of the election counted as cast for the proposition fifty-seven ballots actually cast against it, and thereafter certified that more than two-thirds of all the voters voting on the proposition had voted for it. A court of equity, in view of the Constitution and the statutory enactments relating to election contests, has no jurisdiction of such a suit, even when brought by taxpayers of the district.

Appeal from Randolph Circuit Court.—*Hon. A. W. Walker,* Judge.

REVERSED.

*Jesse W. Barrett,* Attorney-General, and *Hunter & Chamier* for appellants.

(1) It is a general rule that courts of equity have no inherent power, nor any jurisdiction, to try contested elections, notwithstanding fraud on the part of the election officers. 20 C. J. 216; 8 Standard Ency. Proc. 16. (2) An exception to the rule, that it is the province of equity to afford redress in cases of fraud, is made in political affairs, which have always been held to lie outside

the sphere of equity; and in Missouri a court of equity will not investigate a charge of fraud in the conduct of an election to authorize a public debt, even though there is no provision by statute for a contest of such election at law.  Wilson v. Washington Co., 247 S. W. 185; State ex rel. Wahl v. Speer, 284 Mo. 45, 58; State ex rel. Ray County v. Hackmann, 295 Mo. 417, 424.  (3)  In Missouri, specific authority must be granted to try an election case; no election can be contested unless the Legislature has provided a remedy; no method for contesting a school bond election has been provided by statute; the Legislature has not vested any court with authority to determine that such an election was fraudulent; the mode of procedure in an election contest is incompatible with the course of a suit in equity.  Wilson v. Washington Co., 247 S. W. 185; State ex rel. Wahl v. Speer, 284 Mo. 45, 58; State ex rel. Ray County v. Hackmann, 295 Mo. 417, 424.  (4)  The judges and clerks of the election in question acted judicially or *quasi*-judicially; their certificate or declaration of the result of the election cannot be re-examined judicially; the right of citizens to honest elections is meant by the law to be protected by such judges and clerks; this protection has been deemed by the Legislature sufficient in case of election like the one in controversy.  Wilson v. Washington Co., 247 S. W. 187; State ex rel. Wahl v. Speer, 284 Mo. 45, 58; State ex rel. Ray County v. Hackmann, 295 Mo. 417, 424; Piker v. Megoun, 44 Mo. 491; McGowan v. Gordner, 186 Mo. App. 484, 492; Blake v. Brothers, 79 Conn. 676, 11 L. R. A. (N. S.) 501 and note.

*J. H. Whitecotton, A. R. Hammett* and *A. C. Gladney* for respondents.

(1)  The petition states facts sufficient to constitute a cause of action against defendants, and appellants' demurrer was properly overruled.  Sec. 1969, R. S. 1919; Robinson v. Wiese, 210 S. W. 889; Neiser v. Thomas, 99 Mo. 224, 228; State v. Saline Co. Court, 51 Mo. 350, 380;

Harrison v. Norton, 148 S. W. 497, 104 Ark. 16; Overhall v. Ruenzi, 67 Mo. 203, 207; Krieschel v. Board of Snohomish Co. Comrs., 12 Wash. 428, 41 Pac. 186. (2) As a general rule courts of equity have no inherent power, nor any jurisdiction, to try purely contested election cases, notwithstanding fraud on the part of the election officers, but that doctrine does not apply where the result of the election causes an irreparable injury to the real and personal property of the citizen and taxpayer, where no adequate remedy at law can be had. Judson on Taxation, p. 240; McCrarry on Elections (2 Ed.) p. 390, sec. 458; McCrarry on Elections (2 Ed.) p. 292, note. (3) A court of equity in Missouri and in many other states will investigate the charges of fraud and take jurisdiction of charges of fraud as to the result of an election authorizing a public debt, unless there is a provision by statute providing for a contest of such election, or there is no remedy provided by statute or otherwise in law to protect the citizen against illegal and fraudulent elections. In Missouri, courts have equitable jurisdiction to try and determine the legality of elections which authorize the issuing of bonds and the levying of taxes on property without any authority by statute specially providing for a contest of such election. Robinson v. Wiese, 210 S. W. 889; Gibson v. Board of Supervisors of Trinity Co., 80 Cal. 359, 22 Pac. 225; Dickie v. Reed, 68 Ill. 262; Calaverous Co. v. Brockway, 30 Cal. 325; Shumacker v. Toberman, 56 Cal. 508; Andrews v. Pratt, 44 Cal. 309; Maxwell v. Supervisors, 53 Cal. 389; Foster v. Coleman, 10 Cal. 278. (4) The judges and clerks of election in question did not act judicially nor *quasi*-judicially in the making of the certificate of election and especially in counting the ballots. This being true, a court of equity is not precluded from exercising jurisdiction in cases of fraud in the counting and declaring the result of an election providing for the issuing of bonds or contracting an indebtedness to the taxpayers where no affirmative authority is given by statute or

otherwise. Pagosa Springs v. People, 23 Colo. App. 479, 130 Pac. 618.

LINDSAY, C.—This is an equitable proceeding, to test the validity of an election. An injunction was granted against the defendant officials. The plaintiffs are resident taxpayers and voters of Consolidated School District No. 4 in Randolph County, known as the Cairo Consolidated School District. The defendants comprise respectively the directors of said school district, the county clerk, county treasurer and county collector of Randolph County, and the State Auditor. On May 12, 1923, an election was held in said school district, pursuant to a resolution theretofore adopted by the board of directors of the district, to vote upon a proposition to issue bonds of said district in the sum of $8000, for the purpose of constructing certain additions to the school building. The result of said election, as certified by the judges and clerks appointed to hold the same, showed that the total number of votes cast thereat was 406; that there were cast for the loan 297 votes, and against the loan 107 votes. Thereafter, the board of directors, declaring the result of the election to be in accordance with the foregoing, passed resolutions providing for the issuance of the bonds, for securing bids thereon, and for levying taxes for interest and sinking-fund purposes, and for registering the bonds with defendant State Auditor. Afterward, on May 26, 1923, plaintiffs filed their petition in this suit, amended on July 30, 1923, asking for a decree holding that said election was void and of no effect in law, and asking that the defendants be enjoined and restrained in their several and respective official capacities, from taking any action to issue, countersign or register said bonds, or to extend, levy or collect taxes applicable thereto.

The amended petition alleged that legal and proper notice of the holding of said election was not given, and for that reason the judges and clerks had no right to

hold and carry on the election, and upon that ground that said election was void. It is not necessary further to refer to this allegation as to the notice, because it is not contended here by plaintiffs that the notice was not given; the record shows that it was given; and the judgment of the trial court that the election was void, rests upon a finding that "a two-thirds majority of the voters of Consolidated School District No. 4, voting at said election, did not vote in favor of said proposition to issue eight thousand dollars of bonds."

The elements of the petition necessary to be considered under the essential issue made here are now to be pointed out. The petition alleges that the plaintiffs are informed that the total number of votes cast was 406; of which number so cast, more than one hundred and sixty-four were voted and cast against the proposition, and only about two hundred and forty votes were cast in favor of it, and that of the votes cast in favor of it there were cast the votes of four named persons who were not legal voters of the district. The petition then alleges that of the four hundred and six voters voting at the election, one hundred and sixty-four persons (named in the petition) and others, "each and all and every cast their ballot and voted against said proposition." The petition then proceeds with the allegation involving the sole important question in the case, as follows: "that notwithstanding the fact that the vote was cast as aforesaid by the voters aforesaid and that voters cast more than one hundred and sixty-four votes against the proposition, said judges and clerks erroneously, wrongfully and fraudulently caused and permitted said ballots to be erroneously and wrongfully counted as cast and thereby a different result was obtained and certified than should in truth and in fact have been certified, and that said result so certified by said judges and clerks was not authorized by said vote; that plaintiffs are not informed as to whether or not said false and incorrect result was obtained by negligence in counting said ballots or other-

wise, but plaintiffs state that said result was brought about by the negligence, fraudulent and wrongful acts and conduct of the said judges and clerks aforesaid in the receiving, voting and in counting and certifying said ballots and the result thereof, as certified by them as aforesaid; that said judges and clerks, while holding said election and receiving the ballots of said persons aforesaid, permitted the same to be changed and a different ballot cast or by mistake or error in the receiving of the ballots from said voters and in the canvassing of the results of said election fraudulently, erroneously and wrongfully refused to count more than fifty-seven ballots that were cast in opposition to the proposition and that of the more than one hundred and sixty-four ballots and votes which were voted and cast against said proposition only one hundred and seven of the same were shown by the return and certificate of said judges and clerks to have been against said proposition and loan, and that by reason of the wrongful conduct of said clerks and judges aforesaid and of the errors committed by said judges and clerks said returns are fraudulent and wrongful and untrue and did not and do not show the true and correct vote as made at said election by the qualified voters of said district, and that by reason of said facts aforesaid and by reason of the further fact that at said election said proposition of loan did not receive two-thirds of the qualified votes and ballots cast at said election in favor of said loan, said proposition failed to carry at said election and the result thereof aforesaid is wrongful, erroneous and to the great damage and injury of plaintiffs.''

The defendants, the county clerk, county treasurer and county collector filed separate answers, appropriate to their respective official relations to the controversy. The defendant Hackmann, State Auditor, filed a demurrer, founded upon the reasons: (1) That the court had no jurisdiction in the premises, (2) that there was no equity in the petition, (3) that the petition does not

state facts sufficient to constitute a cause of action, (4) that upon the facts alleged, plaintiffs are not entitled to the relief prayed for, nor to any relief, (5) that the allegations contained in the petition filed as to fraud of the judges and clerks of election are so vague, indefinite and ambiguous and uncertain, that from said petition it cannot be ascertained what the meaning thereof is, nor can defendant obtain sufficient information therefrom as to the case which he is required to answer. The defendant school directors filed a like demurrer. Both demurrers were overruled, and the Auditor declined to plead farther. The directors filed a general denial, followed by averments reciting the steps taken in calling and holding the election, the return of the judges and clerks, the canvass of the returns, and the resolution declaring the result and also alleged that on May 25, 1923, they contracted with William K. Towles for the sale of the bonds, but that delivery of them was held up awaiting the result of this suit, and pleaded that plaintiffs, without giving notice of their intention to contest the election, had permitted the defendants to make and certify levies of taxes, and to contract with said Towles. The answer denies that the return of the judges was false, fraudulent or incorrect, or that any of the judges and clerks committed any fraud, wrong or error, or erroneously or wrongfully counted any ballot, or failed to count any ballot as cast, or permitted any ballot to be changed and a different ballot cast therefor, or that they counted any ballot as having been voted and cast for the loan when the same had been voted and cast against the loan.

The defendants objected to the introduction of any evidence under the petition.

It appears that after the election there were circulated among voters, papers to be signed, each sheet headed by a statement that the person signing the same had voted at the election and had voted against the issuance of the bonds—had scratched out the words ''For the loan,'' and left the words ''Against the loan.'' The

sheets were introduced by plaintiffs, as exhibits, in connection with oral testimony. It must be said that upon the testimony of some of the witnesses, who undertook to tell what they actually did in preparing the ballot, grave doubt is created as to whether they were not at least mistaken in the statement that they had voted against the loan. The defendants produced as witnesses the persons acting as judges and clerks, who testified that the ballots were taken and counted as cast, and the return made and certified accordingly; introduced as witnesses the constable of the township, and the town marshal and others to testify as to the place, manner and general conduct of the election; and also introduced testimony as to the custody and possession of the ballots from the time of the election until the trial of the case. Offers were made upon both sides, according to the varying stages of the controversy, to introduce all of the ballots, or ballots of a particular number, for comparison. The trial court ruled that the ballots could not be admitted.

However, it is not necessary to discuss or undertake here to weigh the evidence. The sole question briefed, and put in issue on the appeal, is the question whether the circuit court had power to review, and to annul this election, upon the ground that there was fraud committed by the officials holding the election. It has heretofore been held by this court that since the common-law doctrine is that the result of an election when declared by the supervising officials cannot be re-examined by a court of equity, the remedy is one which must be provided for by legislative enactment, and it is to be pursued only in accordance with the method so provided. [State ex rel. Ray County v. Hackmann, 295 Mo. 417, 424; Wilson v. Washington County, 247 S. W. 185.]

The cases are reviewed in State ex rel. Wahl v. Speer, 284 Mo. 45, in an opinion written by GOODE, J. In that case and in the other proceedings referred to in the opinion, the election involved was one for the cre-

ation of an indebtedness of Pemiscot County for the
building of a court house. The essential contention made
was that because an election of that kind may entail upon
taxpayers an increased burden a court of equity will take
jurisdiction where fraud is charged, if no statutory
mode of contesting the result has been provided. The
various phases of the subject are considered in that opin-
ion, and cases arising in other states are discussed. A
summary of the conflicting contentions, and of the con-
clusions reached, is given at page 58:

"It is argued that where there is no other remedy
equity should take jurisdiction in order to prevent elec-
tions from being carried by illegal or fraudulent voting;
that the case falls within the ancient jurisdiction of
equity to grant relief in all cases of fraud. This argu-
ment carries weight, for alike in equity and in law fraud
vitiates all affairs wherein it is predominantly influen-
tial. It is the province of equity to afford redress against
such an influence when the common law provides no ade-
quate remedy. An exception is made to this general doc-
trine in political affairs which have always been held to lie
outside the sphere of equity, and doubtless for this reason
it is held that a charge of fraud in the conduct of elec-
tions is insufficient to enable a chancery court to enter-
tain a contest. But property rights and interest are
affected by the creation of public debts; which is a fact
urged and sometimes accepted as a reason why a con-
test proceeding will lie in equity, if the statute provides
no remedy and the election was one to incur a public in-
debtedness.

"The provision of the enacted law of this State regu-
lating the contest of elections, is persuasive that the
Legislature never has intended there should be a ju-
dicial inquiry concerning the legality of the voting in a
county bond election. The Constitution itself commands
the Legislature to designate the courts or judges by
whom the several classes of election contests shall be
tried and also to provide the manner of trial and all

matters incident thereto. [Mo. Const., art. 8, sec. 9.] Pursuant to that mandate, statutes have been enacted to contest the election of various classes of officials, also those held under the Local Option Law, and perhaps others. One section of the law reads as follows:

" 'Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice of contest, unless the same shall be continued by consent, or for good cause shown.' [R. S. 1909, sec. 5928.]

"The expression 'every court authorized to determine contested elections,' etc., implies that specific authority must be granted to a court to try such cases, or it will not have the power to do so; that a general subject-matter or head of equity cognizance, like fraud, does not suffice to confer this power. Moreover, the mode of procedure ordered to be pursued in a contest proceeding, is incompatible with the course of a suit in equity.

"The right of citizens and taxpayers to honest elections is meant to be protected by the judges who supervise the voting at the polls; and so far this protection has been deemed by the Legislature sufficient in case of elections like the one in controversy. The statutes impose on the judges the duty of passing on the qualifications of voters, and of deciding whether a person who offers to vote is entitled to do so. In the performance of this duty, the judges act in a judicial or a *quasi*-judicial capacity. [Pike v. Megoun, 44 Mo. 491; McGowan v. Gardner, 186 Mo. App. 484, 492; Blake v. Brothers, 79 Conn. 676, 11 L. R. A. (N. S.) 501, and citations in note.] The right is also accorded to any bystander to challenge a vote. [R. S. 1909, sec. 5900.] Elections to incur public debts have been conducted in this State from an early day, and yet the rule has always been declared that there can be no contest of any election except where one is

authorized by a statute, and so far no statute of the kind has been enacted in respect of municipal bond elections; whereas statutes are in force for the contest of other kinds. By reason of this non-action by the General Assembly and the common-law doctrine that the result of elections if declared by supervising officials, could not be re-examined judicially, and the prevalent doctrine that equity takes no cognizance of such matters, we hold the Circuit Court of Pemiscot County is without jurisdiction of the cause there pending to annul the election in contest.''

This decision was followed in State ex rel. Ray County v. Hackmann, 295 Mo. 417, where the election held was upon a proposal to issue bonds and incur an indebtedness for the purpose of building roads. The same question arose in Wilson v. Washington County, 247 S. W. 185. It was there said, at page 187: ''While it is the province of equity to afford redress in cases of fraud, and exception is made to this general doctrine in political affairs, which have always been held to lie outside of the sphere of equity, and for this reason it is held that a charge of fraud in the conduct of elections is insufficient to enable a chancery court to entertain a contest.'' The holding was adhered to that ''specific authority must be granted a court to try election cases or it will have no power to do so, and that the mode of procedure in an election contest is incompatible with the course of a suit in equity.'' In State ex rel. v. Hackmann, 274 Mo. 551, it was said, at page 565: ''It is settled law that election contests did not exist at common law, but are purely creations of statute.''

There are remarks not in harmony with the foregoing, in the opinion in Robinson v. Wiese, 210 S. W. 889. There was a proceeding by taxpayers of a school district to annul and to cause to be surrendered bonds which had been sold, and to enjoin the collection of taxes levied for their payment, upon the ground that the election was invalid through irregularities, errors, and fraud.

Stating the position of the plaintiffs in that case, the commissioner writing the opinion said, l. c. 894: "Nor do they favor us with any argument to sustain the position that we have the inherent right, without express legislative authority, to revise the count of those expressly authorized by law to make it and declare the result. They rely exclusively upon our general jurisdiction as a court of equity to grant relief on the ground of fraud, which may, under proper circumstances, when properly and timely invoked, avoid all transactions, including our own judgments. We think this general proposition is true in those cases involving the private property of individuals, and is therefore applicable in this case. The question is whether, upon this record, they have properly invoked this extraordinary power." The case was then disposed of upon the ground that before the bringing of the suit the proceeds of the sale of the bonds had already been devoted to the use of the school district, and the plaintiff taxpayers themselves were sharing in the benefits. The plaintiffs there having thus waited before instituting their proceeding, it was held they were in no position to demand relief. There was full concurrence by the judges in the result, but not in all that was said. This case was decided in Division, before the decision in State ex rel. Wahl v. Speer, which was a decision in Banc.

Cases are cited in the brief of plaintiffs from the courts of California, Colorado and Illinois, as holding views upon the powers of a court of equity contrary to those expressed by this court in State ex rel. Wahl v. Speer, and the other cases mentioned. The rule announced by this court, however, has been formulated upon a consideration of the common-law doctrine, the provisions of the Constitution of this State, and the absence of any legislative provisions for a contest of an election of the character here involved, and must be regarded as settled. It follows from what has been said that the

judgment of the trial court should be reversed. *Small,*
*C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY,
*C.,* is adopted as the opinion of the court. All of the
judges concur.