STATE OF MISSOURI at the relation of CONSOLIDATED SCHOOL DISTRICT No. 3 OF FRANLIN COUNTY, Relator, v. FORREST SMITH, State Auditor.—109 S. W. (2d) 857.

Court en Banc, November 4, 1937.

*Alva C. Trueblood, Carl Trauernicht* and *Seward McKittrick* for relator.

808

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

TIPTON, J.—This is an original proceedings in mandamus to compel respondent, as State Auditor, to register one of a series of bonds issued by relator. To respondent's return, relator filed a motion for a judgment on the pleadings.

Relator is a consolidated school district. On April 20, 1937, an election was held for the purpose of submitting to the qualified voters thereof a proposition to authorize its board to incur an indebtedness in the amount of $42,000 for the purpose of improving its school building, and to evidence such indebtedness by the issuance of its bonds in the above amount for that purpose.

The judges and clerks of that election certified the results of the election as follows:

"That for the Bonds had 394 votes
"That Against, had 197
"Votes Void 6."

It is admitted that the election was regular in all respects. The sole question for our determination is whether the proposition was carried by the necessary two-thirds majority; that is, whether the six void votes reported by the election officials shall be considered in determining the aggregate number of votes cast. If they are counted, the proposition did not receive the consent of two-thirds of the voters

voting on the proposition, as provided by Section 12 of Article X of our State Constitution. If the six void votes are not to be cnsidered in determining the total number of votes cast, then the proposition received the consent of exactly two-thirds of the voters voting on the proposition.

This is a bond election, and "respondent agrees with relator that the return of the election officials cannot be inquired into."

That part of Section 12 of Article X of our Constitution that rules the point presented for consideration is as follows:

"No . . . school district . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose. . . ."

In the case of State ex rel. Kansas City v. Orear, 277 Mo. 303, l. c. 311, 210 S. W. 392, we said:

"Obviously the decision of the question presented involves only a construction of the above-quoted language of the Constitution. This language we are required to construe in its plain, ordinary and usual sense. [Sec. 8057, R. S. 1909.] Such plain, ordinary and usual sense is that meaning which is given to words and language by the recognized and standard dictionaries of the English language. From these we find that the word 'voting' (the same being the present participle of the intransitive verb 'to vote') means 'expressing the will, mind or preference; casting, or giving a vote.' (Webster's Dictionary); 'casting a vote, as a formal, or an authoritative expression of opinion; exercising the right of suffrage.' [Standard Dict; Century Dict.] Turning, as the point does, solely upon the meaning of the words employed in our Constitution, it is manifest that the casese ruled in other jurisdictions are of negligible value, because of the fact that it is almost, if not quite, impossible to find words used in the organic laws of other states which are even substantially like the language of our Constitution."

If the meaning of the words "voter," "voting" and "vote" involve the idea of "expressing a choice or preference," then it follows that the ballot cast by a voter must show that the voter was either for or against the proposition being voted upon; it could not show that he was both for and against it.

We do not know why the six votes were void. It may be that some of the voters voted both for and against the proposition, or that some of the ballots did not show that the voter cast his ballot either way; or it may be that some or all of the six votes were cast by unqualified voters. There is nothing in the record to show the reason why the election officials rejected the six votes as void. In the absence of a showing to the contrary, it must be presumed the rejected ballots were illegal. [Hehl v. Guion, 155 Mo. 76, 55 S. W.

1024.] In fact, respondent admits the rejected ballots were illegal. If the votes were illegal they should not be counted; an illegal vote is no vote. They should not be counted in determining if the bonds were carried by the necessary two-thirds majority. To do so, we would decide three things instead of two: those for the bond issue, those against the bond issue, and those expressing no choice on the bond issue.

In the case of Franklin v. Hume Consolidated School District et al., 271 Mo. 585, 197 S. W. 345, a man by the name of Palmer voted against a bond issue. The judges of the election received his ballot and placed it in the ballot box, and after having counted it against the proposition voted on, they decided he was not a qualified voter and rejected his ballot. We held that the election judges had a right to reject the ballot, even though it did change the results of the election.

We are of the opinion that the provisions of Section 12, Article X, of our Constitution under consideration should be construed to mean two-thirds majority of the legal votes cast showing a preference either in the affirmative or negative for the proposition voted on.

Decisions of other states are of little value in aiding us to construe this section of our Constitution because of the fact that it is almost impossible to find words used in the organic laws of other states that are even substantially like the language of our own Constitution. However, the decided weight of authority is that void ballots should not be included in determining whether the proposition voted on received the necessary majority.

In the case of Bott v. Secretary of State, 62 N. J. L. 107, 40 Atl. 740, the language of the New Jersey Constitution was, "A majority of the electors . . . voting thereon." In that case the court said:

"Though a qualified voter succeeds in getting his name on the poll list and has a ballot in the ballot box, he is not a voter voting on the amendments unless his ballot is such as is prescribed by law and conforms to the general law regulating elections."

The following cases are to the same effect: Wightman v. Tecumseh, 157 Mich. 326, 122 N. W. 122; State ex rel. Short v. Clausen, 72 Wash. 409, 130 Pac. 479; Hopkins v. Duluth, 81 Minn. 189, 83 N. W. 536. To the contrary, however, are the cases of Eufaula v. Gibson, 22 Okla. 507, 98 Pac. 565, and Smith v. Board of Commrs. of Renville County, 64 Minn. 16, 65 N. W. 956.

We are of the opinion that the bond issue received the constitutional two-thirds majority and that our peremptory writ of mandamus should issue. It is so ordered. All concur, except Hays, C. J., absent.