A. D. COOPER, MRS. ELLA THOMAS, CHARLES U. FLOTO, EMMA B. JACKSON, JAMES SAXTON and N. H. HESS, Appellants, v. SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, and HUNT C. MOORE, President, HORTENSE T. TURNER, HARRY C. CLARK, RAY O. JOSLYN, MRS. HENRY I. EAGER, and JOHN M. GREGORY, Constituting its Board of Directors; and BEN NORDBERG, County Clerk of Jackson County, Missouri, Respondents, No. 42117—239 S. W. (2d) 509.

Division Two, May 14, 1951.

Thurman L. McCormick and William I. Potter for appellants.

*Blatchford Downing, Edward T. Matheny, Jr.,* and *Caldwell, Downing, Noble & Garrity* for respondents, the School District of Kansas City and Members of its Board of Directors; *Hilary A. Bush,* County Counselor, *August F. Behrendt,* Assistant County Counselor, for respondent Ben Nordberg, County Clerk.

BARRETT, C.—This is a suit by six voters and taxpayers, "on their own behalf, and on behalf of all other parties and persons similarly situated,", against the School District of Kansas City, its officers and board of directors and the county clerk of Jackson County. The purpose of the suit is to restrain, by injunction, the school district and its secretary and directors from certifying to the county clerk that two-thirds of the qualified voters of the district, voting at a special election on March 28, 1950, approved a tax increase of thirty-eight cents on the one hundred dollar valuation and to restrain the county clerk from extending the increased tax levy upon the tax books of the county. The defendants filed a motion to dismiss the plaintiffs' petition asserting (a) that the court had no jurisdiction of the subject matter of the action and (b) that the petition "fails to state facts sufficient to constitute a claim upon which relief can be granted." Without definite specification of either reason the trial court sustained the motion and dismissed the plaintiffs' petition. Upon this appeal by the voters and taxpayers it is insisted that the court erred in dismissing their petition because, upon the facts alleged, the election was a nullity and void in that "the school board called and conducted" the election in violation of mandatory, constitutional and statutory limitations and restrictions which required the tax increase to be submitted to qualified voters only. It is the claim of the appellants that the levy was "submitted to and voted upon by qualified and unqualified voters" and by reason of that fact the election levying the tax is void.

The appellants state that jurisdiction of the appeal is in this court because a "political subdivision of the state" is a party, because "the construction of the revenue laws of this state" is involved and because "the amount in dispute" exceeds the sum of $7500. Const. Mo., Art. 5, Sec. 3. But a county clerk or a clerk of a school district is not a "state officer" within the meaning of this court's constitutional jurisdiction (Young v. Brassfield, (Mo.) 223 S. W. (2) 491) and it has been recently decided that a school district as a party is not such a political subdivision of the state as to give this court jurisdiction of an appeal. Hydesburg Common School Dist. v. Rensselaer Common School Dist., (Mo.) 214 S. W. (2) 4. The essential purpose of the suit is to enjoin the certification of the results of the election and while the revenue laws of the state may be indirectly or incidentally involved the appeal does not primarily and directly concern the construction of the revenue laws of this state in such manner as to give this court jurisdiction. Young v. Brassfield, supra; Hurtgen v.

Gasche, (Mo.) 223 S. W. (2) 493; White v. Boyne, 324 Mo. 176, 23 S. W. (2) 107. Compare: State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S. W. (2) 206; Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2) 826.

If jurisdiction of the appeal is in this court it must be by reason of the fact that "the amount in dispute" is in excess of $7500. The question has not been considered heretofore in an identical or even in a similar case. There is no amount of money directly in dispute (Jackson v. Merz, 358 Mo. 1212, 219 S. W. (2) 320) and the relief sought is not a money judgment but an injunction against the certification and extension of the tax levy and the test of the court's monetary jurisdiction "when the object of the suit * * * is not to obtain a money judgment, but other relief, the amount involved must be determined by the value in money of the relief to the plaintiff, or of the loss to the defendant, should the relief be granted, or vice versa, should the relief be denied." Evens & Howard Fire Brick Co. v. St. Louis Smelting & Ref. Co., ▮ 48 Mo. App. 634, 635; McGuire v. Hutchison, 356 Mo. 203, 201 S. W. (2) 322; Juden v. Houck, (Mo.) 228 S. W. (2) 668. When relief other than a money judgment is sought the fact of a value in excess of $7500 must affirmatively appear from the record and may not be surmised or conjectured. Fanchon & Marco Enterprises v. Dysart, (Mo.) 189 S. W. (2) 291; Ewing v. Kansas City, 350 Mo. 1071, 169 S. W. (2) 897. Here the sum in dispute does not appear so clearly as it does in the suits to enjoin the issuance or registration of bonds in excess of $7500, or in the instance of the enjoining of the expenditure of the proceeds of a bond issue in excess of $7500, Missouri Power & Light Co. v. Bucklin, 349 Mo. 789, 163 S. W. (2) 561; Butler v. Board of Education of Consol. School Dist. No. 1, (Mo.) 16 S. W. (2) 44; Kellams v. Compton, (Mo.) 206 S. W. (2) 498; Aquamsi Land Co. v. Cape Girardeau, 346 Mo. 524, 142 S. W. (2) 332. On the other hand the case is not comparable to those in which the bonds have not been voted and the suit is to enjoin the holding of the election (Ward v. Consolidated School Dist. No. 146, 320 Mo. 385, 7 S. W. (2) 689) and neither is it comparable to those in which some future or contingent liability is involved. National Surety Corp. v. Burger's Estate, (Mo.) 183 S. W. (2) 93. Here, in this petition, dismissed upon motion, it is alleged that unless the certification and extension of the tax are enjoined the county will "proceed to assess said increase tax levy against the property, real and personal, of the plaintiffs and all other property owners in said District; that said tax involved in said Certification will total approximately Three Million Dollars; * * *." While it may not be possible, even in this class action, to accurately estimate in dollars the value or benefit in tax savings to the appellants (Ward v. Consolidated School Dist. No. 146, supra), it would appear, should relief be granted, that the

loss in money value to the respondents would approximate the alleged $3,000,000. Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 356-359, 4 S. W. (2) 776, 783-785. See also City of St. Louis v. Essex Inv. Co., 356 Mo. 1028, 204 S. W. (2) 726; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2) 545.

The increased tax levy was carried by a vote of 68,470 to 30,013. The appellants allege that 25,000 to 30,000 "persons were permitted to vote in said Election although they were not qualified voters under the law," and therefore, the election and increased tax are illegal and void. The appellants' claim that the increased tax levy was submitted to and voted upon by unqualified as well as qualified voters is based upon dual allegations; one having to do with what may be termed the inducing or background charges, and the other having to do with the specific facts relied upon as demonstrating the illegality of the election.

In the first category it is alleged that the election was called for the "purpose of submitting to and securing approval of a two-thirds majority of the qualified voters in said School District of an increase in the tax levy above the Constitutional limit for school purposes of 38¢ on $100.00 assessed valuation on all real and personal property in said School District." In connection with the calling and conduct of the election it is alleged that it was the duty of the school board, under the constitution and the law, to submit the question to a vote of the qualified voters and none other. It is charged, in this connection, that it was the duty of the board, under the statutes (Mo. R. S. 1949, Sec. 165.487) to give due and legal notice of the election including a specification of the questions to be submitted to the voters and a designation of the voters to whom said questions would be submitted. It is charged that "it became and was the duty of the School Board to carry forward, conduct and control said election in strict compliance with the terms and conditions embraced in the aforesaid published notice; * * *." It is alleged that under the constitution, the laws and the notice only qualified, meaning registered, voters were entitled to vote in the election. In this connection it is alleged that under the statute (Mo. R. S. 1949, Sec. 165.473) it was the duty of the board of directors of the school district to obtain from the Board of Election Commissioners of Kansas City [512] a certified list of all qualified voters in each ward, "which list the Board of Directors shall cause to be delivered to the Judges of Election of the proper polling places for their use in enabling them to determine the qualifications of persons offering to vote; that the aforesaid statutes places the exclusive duty and obligation upon the Board of Election Commissioners to determine and compile the names and addresses of the qualified voters of each ward in said city, which list, when so compiled, shall constitute the exclusive and complete list of the qualified voters; that said statutes excludes and removes any

and all discretionary power on the part of the School Board, to set up or create a further or different list than that compiled and furnished by said Board of Election Commissioners, as aforesaid." It is not alleged in the petition, but in their brief the appellants say that "The school board, in conducting the election involved herein, did in fact secure, as required by Section 10689, R. S. 1939, (Mo. R. S. 1949, Sec. 165.487) a list of the registered voters and delivered the same to the respective precincts."

After setting forth the inducing charges and the duties of the school board in connection with the election, it is alleged in the petition and stated in their brief that the notice required by the statute (Sec. 165.487) was published in the "Daily Record" and the "Kansas City Star" on March 18th and March 27th, 1950. The notice, as an exhibit, is alleged to be a part of the petition. Then it is alleged that prior to the completion of the publication required by the statute, on the 23rd day of March 1950, the school board "in contradiction, repudiation, modification and in variance thereof, widely published and circulated a further, other and different notice than the notice set forth in Exhibit A referred to above. That by and through the terms of said contemporaneously published notice the questions specified for submission to the qualified voters of said School District were submitted, not to the qualified voters of said District, but by the terms of said notice, and through the action of said School Board said questions were submitted to a vote of unqualified persons in said District, * * *." It is alleged that the board in violation of its published notice "decided and declared" that unregistered voters were qualified to vote in the election, that "in harmony with the conclusion and declaration so made" and in violation of the law and of the published statutory notice the board "ordered printed and distributed to the Judges and Clerks of Election many thousand of affidavit forms; that in connection therewith the School Board instructed and directed said Judges and Clerks of Election to permit unregistered persons, otherwise qualified, to vote upon signing said 'affidavit' form; that in pursuance of said scheme and plan to permit and induce unregistered and unqualified voters in said District to vote * * * notice was widely published in the daily press and by letters written by said School Board, as well as by radio and through public meetings, that unregistered voters could legally vote; * * *." In this connection it is alleged "that in nullification and in repudiation of said notice" and "following the first legal advertisement of said Election * * * in avoidance of a submission of the questions designated for submission to the qualified voters in said District, said Board wrote and distributed a letter informing the public that unregistered and unqualified voters could legally vote in said Election." *That letter which is alleged to "constitute a second notice at variance with and in contradiction of the first published notice" by which it is alleged*

the tax levy was submitted to unregistered and unqualified voters, thereby rendering the election and the tax invalid is, by allegation, made a part of the petition. That letter, written on the school district's stationery and signed by the secretary of the board of education is as follows:

"March 23, 1950

"To the Parents of Students in the Kansas City Schools:

"Dear Parents:

"When school closes on April 28, the children in Kansas City will have had the shortest school year of any Kansas City children in the past 75 years. Whether this tragedy is to be repeated another year depends ▆ upon the outcome of the levy election next Tuesday.

"This levy, as you know, is being voted for a two-year period only. The rate for school purposes will automatically drop back to $1.00 at the end of the two-year-period. The voters, at that time, will have to approve any levy rate that might be proposed.

"Two people must vote for the levy for every one who votes against it in order for it to pass. So it is exceedingly important for every friend of children to vote and to get someone else to vote.

"Special note for anyone not registered: *You don't have to be registered to vote.* If you have lived in Missouri a year and in Kansas City 60 days, you can vote. You go to the polls and sign a slip saying you meet the above qualifications. Take along your social security card or some other simple identification.

"Remember it takes twice as many people voting for the schools as there are voting against in order for us to have a full school year next year. By getting a huge turn-out of "For" votes is the only way to get the job done.

"Your help is needed and requested.

Cordially yours,
Amos L. Burks
Amos L. Burks
Secretary, Board of Education"

Following these allegations and because of the acts charged it is alleged that 25,000 to 30,000 unqualified voters were permitted to vote and thereby, in fact, the levy was not voted by the required two-thirds majority of the qualified voters. It is alleged "when the polls closed on said date the ballots of both the qualified and unqualified voters were counted and delivered to the said Board of Directors" and that the Board unless enjoined will certify the result to the county clerk who in turn will extend the tax on the tax books.

Admittedly, as the appellants argue here, the election was a special election and statutory notice to the qualified voters was required. The official notice, the one required to be published by the statute, was published "at least ten days" before the date of the election

"by the insertion of two notices in each of two newspapers printed and published" in the district. Mo. R. S. 1949, Sec. 165.487. There is no objection whatever to either the form or substance of that notice. It recites, in its caption, that it is "Notice Of Biennial Election In The School District Of Kansas City For * * * Voting Upon The Question Whether The Annual Rate of Taxation For School Purposes Shall Be Increased Above Constitutional Limitation Otherwise Applicable." In reciting the purposes of the election, among other things, the notice says, "For vote by the qualified electors of said School District, upon the question whether the annual rate of taxation for school purposes shall be increased above the constitutional limitation * * * a tax of One Hundred Thirty-eight Cents (138¢) on the One Hundred Dollar ($100.00) valuation * * *." In the second paragraph it says, "The qualified voters of said School District will vote by ballot" for two school directors. "The qualified voters of said District will also vote by ballot on the question of increasing the annual rate of taxation above the constitutional limitation otherwise applicable." Specific directions are then set forth explaining how voters may mark their ballots to vote either "for" or "against" the increased tax levy. In conclusion the notice recites that "Voters qualified to vote at said election residing in Kansas City, Missouri, shall vote each at the polling place below designated * * * as the same are shown in the office of the Board of Election Commissioners of Kansas City which places have been designated by the Board of Directors of the School District, * * *." Admittedly, also, the constitutional two-thirds majority of voters and the voters contemplated by the statutes and the officially published notice means "of the legal votes cast." State ex rel. Consolidated School Dist. No. 3 v. Smith, 341 Mo. 807, 810, 109 S. W. (2) 857, 858. Unqualified voters may not vote and illegal ballots or ballots cast by unqualified voters may not be counted. Kellams v. Compton, (Mo.) 206 S. W. (2) 498, 4 A. L. R. (2) 612. In this connection it may be noted that with reference to special elections concerning school ▮▮▮ districts the boards of directors of the districts have certain duties and functions to perform. Just what those functions and duties are need not be determined and set forth here but they do not include the duty and function of determining what persons are "qualified voters" or of counting the ballots. "The judges and clerks shall be sworn, and the election, except as in this section otherwise provided, shall be conducted in the same manner as elections for county and state officers. * * * Immediately after the close of the election the ballots shall be counted, and, after being counted, shall be sealed up in a package and delivered to the secretary of the board of directors, * * *. *The result of the election shall be certified by the judges and clerks to the secretary of the board of directors,* who shall report the same to the board of directors, which shall order the same duly

entered on the records * * *.'' Mo. R. S. 1949, Sec. 165.473. This is not an election contest (State ex rel. City of Berkeley v. Holmes, 358 Mo. 1237, 219 S. W. (2) 650) and, prima facie, the certificate of the judges and clerks of the election must be accepted. State ex rel. Consolidated School Dist. No. 3 v. Smith, supra; Kellams v. Compton, supra.

It is recited in the petition that in ''contradiction, repudiation, modification and in variance'' of the officially published notice the board of directors ''widely published and circulated a further, other and different notice than the notice set forth in Exhibit A.'' These are not, of course, allegations of fact but meaningless conclusions and may not be accepted in lieu of facts as demonstrating the ultimate claim. Bernhardt v. Long, 357 Mo. 427, 209 S. W. (2) 112. Despite these and other conclusional allegations it turns out that the alleged second notice was not and did not purport to be an official notice required by statute but ''a letter.'' It will be observed that it was in the nature of a plea to school patrons rather than a ''notice.'' It so happens that the letter, at least in part, correctly set forth in general terms the qualifications of voters in cities of 300,000 to 700,000 inhabitants. Mo. R. S. 1949, Sec. 117.040. Accepting the factual allegations of the petition, it was not an official notice and was not issued to the official judges and clerks of the election as an authoritative directive from the board of directors. In any event it was not binding upon the judges and clerks of the election who had the duty, under the statute, of conducting the election, of counting the ballots and certifying the result of the election. In an election contest it might be shown that this or similar letters were improperly used and brought about illegal voting but it does not prove the conclusional charge of ''a second notice at variance with and in contradiction of'' the official, statutory notice. The alleged ''affidavits'' are not set forth either in the petition or as exhibits and, consequently, their effect or legality is not known. In short, the acceptable allegations of fact do not demonstrate the ultimate conclusion that 25,000 to 30,000 unqualified voters voted for the increased tax levy and that their votes were improperly or illegally counted by the judges and clerks of the election, who incidentally are not parties to this action. For the reasons indicated the petition fails to state facts sufficient to constitute a claim upon which relief can be granted. Bernhardt v. Long, supra; State ex rel. Consolidated School Dist. No. 3 v. Smith, supra; Armantrout v. Bohon, 349 Mo. 667, 162 S. W. (2) 867.

In this view of the case it is unnecessary to determine whether the registration laws are applicable to school elections in the school district of Kansas City and whether in fact this action is an election contest. On the latter question see Jacobs v. Cauthorn, 293 Mo. 154, 238 S. W. 443; Peter v. Kaufmann, 327 Mo. 915, 38 S. W. (2) 1062;

School Dist. No. 61 v. McFarland, 154 Mo. App. 411, 134 S. W. 673; and compare State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S. W. 655; Boney v. Sims, 304 Mo. 369, 263 S. W. 412; State ex rel. City of Clarence v. Drain, 335 Mo. 741, 73 S. W. (2) 804; Arkansas-Missouri Power Corp. v. City of Potosi, 355 Mo. 356, 196 S. W. (2) 152.

The judgment dismissing the appellants' petition is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.