Lawrence J. BAUER and Robert J. Carpenter, Appellants,

v.

CITY OF BERKELEY et al., Respondents.

No. 44307.

Supreme Court of Missouri.

Division No. 1.

May 9, 1955.

Meyer, Hoester & Coleman, Robert G. J. Hoester, Clayton, for appellants.

Elmer J. Meyer, Clayton, Theodore C. Bruere, St. Charles, for respondents, Missouri Petroleum Products Co. and St. Charles Quarry Co.

William J. Becker, Clayton, for respondents, City of Berkeley, Wilfred Bangert, Mayor of the City of Berkeley, Roy H. Heitman, Treasurer, The Board of Aldermen of the City of Berkeley, Louis Broyles, Henry Tungate, Glennon Ryan, Glennon Harris, Norman Champ and Fackney Smith, as Members of the Board of Aldermen of the City of Berkeley, and Wilfred Bangert, individually.

C. Willard Max and Richard W. Jacobsmeyer, Clayton, for respondent Asphalt Mix, Inc.

COIL, Commissioner.

Appellants, plaintiffs below, have appealed from a final judgment dissolving a temporary, and denying a permanent, in-junction, and discharging respondents on a citation for contempt. The parties will be referred to as they were designated in the trial court.

Plaintiffs, two taxpayers of the City of Berkeley, averred that they brought a class action representing all others "similarly situated," i. e., as we understand, all other taxpayers of the City of Berkeley. Defendants were the mayor, the treasurer, the members of the board of aldermen of the City of Berkeley, Wilfred Bangert (the mayor) individually, and four private corporations who were alleged to have furnished materials for work on certain streets in that city. The gist of plaintiffs' action was that purported authority granted by the board of aldermen to the mayor to operate the street department, to decide what street work to do, and to begin work on the streets under the "sixty (60¢) cent tax bill method" was an illegal act because in violation of specified sections of RSMo 1949; and that the work performed by Bangert as mayor and as an individual and the purchase of materials therefor were in violation of law and deprived plaintiffs of due process in that they received no notification that the street improvements were a necessity, in that no opportunity was afforded them to protest the improvements, in that they were deprived of the opportunity to receive the benefits to be derived from competitive bidding, and in that they were deprived of the right to have public funds expended according to law. Plaintiffs also alleged that the board of aldermen contemplated the issuance of special tax bills to be made liens on property abutting on the streets on which the work was accomplished.

The relief sought was a restraining order and an eventual permanent injunction to enjoin the respective defendants from contracting for further street improvements under the allegedly unlawful authority which had theretofore been granted; from expending city funds for the street improvements that had been made; from expending city funds for any further improvement of

the streets by virtue of the alleged unlawful authority theretofore granted; from issuing special tax bills therefor; and to enjoin the four private corporate defendants and Wilfred Bangert, as an individual, from doing any further work or furnishing other materials therefor under the allegedly unlawful authority, and from issuing any tax bills as contractors for said improvements.

We first examine the question of our appellate jurisdiction.

The facts, either stipulated or undisputed, which, in our opinion, are decisive on the question of our jurisdiction, are these: Pursuant to the action of the board of aldermen, the mayor took over the operation of the street department with directions to choose street work to be done and to do it in the manner he saw fit, being responsible for such operations to the board of aldermen. Immediately thereafter work was done on six different streets. The total cost of the work was $39,438.92. At the time the suit was filed, the city had paid for this work $32,721.08. There was a balance due of either $6,717.84 or $6,745.11. This balance was purportedly owed to the four private corporate defendants for materials furnished the city (and to truck drivers who delivered it), which materials were consumed in work done on city streets; although it may be that there is a question whether these amounts were due for materials used on the particular streets in question. However that may be, the point for our purposes is, that the only amount remaining unpaid was less than $7,000 at the time this action was instituted.

It was stipulated that all the special tax bills involved for the work done had been issued in the total amount of $24,748.46. Their issuance resulted in an order on the defendant city and its officials to show cause why they should not be punished for contempt because of the fact that the special tax bills were issued subsequent to the date of the restraining order by the circuit court. Thus, the sole issue with reference to the special tax bills was whether defendants, or any of them, should have been punished for contempt. Assuming for present purposes that the total amount of the special tax bills would have been in dispute in this litigation if they had not been issued, and assuming further that this would be true even though it was admitted that plaintiffs were not abutting property owners who would be affected by any special tax bills, it is apparent that, inasmuch as the special tax bills were issued, the amount thereof could not be in dispute in this suit to enjoin their issuance.

█ It thus appears that the only monetary amount directly in dispute under the facts and under the issues presented on this appeal is a sum less than $7,000. It is true, as plaintiffs contend, that when the object of a suit is not to obtain a money judgment, but other relief, the amount in dispute for jurisdictional purposes must be determined by the monetary value of the relief to the plaintiffs or the loss to defendants should the relief be granted or denied. Cooper v. School District of Kansas City, 362 Mo. 49, 54, 239 S.W.2d 509, 510 [3–5]. But it is also clear that our jurisdiction under this principle depends on whether the record affirmatively discloses that the pecuniary value of the relief sought or the financial loss or damage if the relief is granted or denied exceeds $7,500. And this determination may not be left to chance, speculation, or conjecture. It must affirmatively appear. Holland v. City of St. Louis, Mo. Sup., 262 S.W.2d 1, 3 [1, 2], 4 [5–7]. We have searched this record and find nothing therein which affirmatively discloses that the monetary value of the relief if granted or denied, on the facts as they were conceded to be, would exceed the sum of $7,500. Whether the city contemplated further street work under the alleged unlawful authority and, if so, the amount thereof, are, on this record, entirely conjectural.

█ In a reply brief, plaintiffs suggest that because, prior to final judgment, a $2,500 injunction bond was deposited by

plaintiffs, $2,500 should be added to the approximately $6,700 due the contractors, in determining the monetary amount in dispute. Upon dissolution of the temporary injunction, defendants filed separate motions to assess damages on the injunction bond in which they alleged total damages in excess of $7,500. The trial court, of course, did not act on these motions. The matter of damages on the injunction bond is an independent action to be determined after and contingent upon the affirmance or reversal of the final appealable judgment dissolving the temporary injunction. State ex rel. Latshaw v. Reeves, 237 Mo.App. 812, 818, 177 S.W.2d 537, 539 [1-4]. Any judgment thereafter rendered on behalf of any of the defendants on the injunction bond would constitute a final appealable judgment rendered in an independent proceeding. The amount of the injunction bond or the amounts that defendants claimed to have been damaged by the restraining order and the temporary injunction are not to be considered in determining the amount in dispute on this appeal, which involves no issue relating to the injunction bond. We have examined Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 4 S.W.2d 776, upon which plaintiffs rely. That case is not authority for plaintiffs' contention under the instant facts.

We hold, therefore, that the amount in dispute on this appeal does not exceed $7,500 and that no other ground for our jurisdiction appears or is urged.

This case is transferred to the St. Louis Court of Appeals.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.