**STATE of Missouri ex rel. Clyde R. CHRISTIAN, Relator,**

v.

**Ralph M. LAWRY, County Clerk of DeKalb County, Missouri, Respondent.**

No. 24618.

Kansas City Court of Appeals.

Missouri.

July 20, 1966.

Robert H. Frost, Plattsburg, for relator.

Robert L. Ross, Albany, for respondent.

ORIGINAL PROCEEDING IN MANDAMUS

BLAIR, Judge.

Original proceeding in mandamus. Relator, Clyde R. Christian, filed his petition for the writ in this court alleging that on Monday, February 28, 1966, he legally filed with Ralph M. Lawry, County Clerk of DeKalb County, as a Democratic candidate for the nomination for the office of Pre-

siding Judge of the County Court of that county at the approaching August 2, 1966, Democratic primary, and that he did so in compliance with all requirements of law; that notwithstanding the respondent asserts that he did not legally file, or even try to file at any time, and therefore refuses to place his name on the ballot. We issued our alternative writ directed to respondent commanding him to place relator's name on the Democratic primary ballot for the approaching August 2, 1966, primary election as a Democratic candidate for nomination for the office of Presiding Judge of the County Court of DeKalb County as relator prays or to appear before this court and show cause for his refusal to do so. Respondent in due course made return to the alternative writ admitting that he has refused to place relator's name on the ballot, and still does, specifically denying that relator ever filed his candidacy as he alleges, and denying every other averment set forth in the alternative writ. Relator filed his reply to the return denying all averments in the return except the averment that respondent has refused to place his name on the ballot. With the proceeding thus at issue, the evidence presented by both relator and respondent was heard by the entire membership of the court. For clarity and brevity we hereafter refer to the relator as Christian and to the respondent as the the clerk.

The parties to this controversy are quite rightly in agreement that Christian could not legally become a candidate for the Democratic nomination for the office of Presiding Judge of the County Court or be entitled to have his name placed on the ballot in the approaching August 2, 1966, primary unless he (1) paid to the treasurer of the Democratic County Central Committee the sum of $25.00 and took his receipt for such payment, (2) filed a declaration of his candidacy with the county clerk stating his full name, residence, the office for which he proposed himself as a candidate, the party upon whose ticket he was to be a candidate and that if nominated and

elected to the office he would qualify, (3) filed with such declaration his receipt from the treasurer of the Democratic Central Committee, and (4) did so on or before 5 P.M. prevailing local time on the last Tuesday of April, April 26, 1966, preceding the primary to be held on August 2, 1966. Secs. 120.340, 120.350, 120.370, V.A.M.S.

 The clerk argues that he is entitled in this controversy to the benefit of the presumption that public officers properly discharge their duties and that he has properly discharged his own in this instance. He cites 76 C.J.S. Records § 34, p. 132, which states his position: "The law presumes that a public officer will properly perform his duty, and it has been held that if a particular paper is not found in a public office where, if in existence, it ought to be, it will be presumed that it never existed." Since Christian's candidacy is not on file in his office, as he says, he argues that we must presume it never was filed and never existed in his office. There is such a presumption but it is a rebuttable one and not conclusive just as all other rebuttable presumptions are not conclusive. "In civil cases we hold that a presumption is a rule of law (unless it is a conclusive presumption, i.e., a rule of substantive law) which puts the burden of producing *some substantial evidence* on the party presumed against; that when substantial evidence, *however slight*" appears, "the presumption disappears and the triers of fact receive the issue free from any presumption; * * *." (Emphasis supplied.) State v. Martin, 364 Mo. 258, 260 S.W.2d 536, 541; Bridle Trail Assn. v. O'Shanick, Mo.App., 290 S.W.2d 401, 408; Sowders v. St. Louis & S. F. R. Co., 127 Mo.App., 119, 104 S.W. 1122, 1123; Western Advertising Co. v. Star Pub. Co., 146 Mo.App. 90, 123 S.W. 969, 973; Stack v. General Baking Co., 283 Mo. 396, 223 S.W. 89, 97; 12 Mo. Digest, Evidence, Dealing with the precise presumption invoked in this controversy, and exactly in point, are: Miller v. Town of Canton, 112 Mo.App. 322, 87 S.W. 96, 98; State ex rel. Ball v. State Board of Health, 325

Mo. 41, 26 S.W.2d 773, 777; State ex rel. DeWeese v. Morris, 359 Mo., 194, 221 S.W. 2d 206 209. Moreover, the rule that the rebuttable presumption that public officers properly perform their duties disappears on the appearance of substantial evidence to the contrary, applies with equal force in mandamus proceedings. State ex rel. Herriford v. McKee, 150 Mo. 233, 51 S.W. 421, 423; State ex rel. Rawlings v. Kansas City, 213 Mo.App. 349, 250 S.W. 927, 931; State ex rel. Consolidated School Dist. No. 3, etc. v. Smith, 341 Mo. 807, 109 S.W.2d 857, 858. Sufficient it is to say here that Christian presented substantial evidence contrary to the presumption with which this proceeding commenced and it was not *slight* substantial evidence, although substantial evidence of that weight would have sufficed to destroy the presumption. Accordingly, we "receive the issue free from any presumption" (State v. Martin, supra) and we must adjudge it just as if there had never been any presumption in the beginning.

■ The clerk argues that in this proceeding we must proceed with "great caution" and not rule that Christian filed his receipt for the statutory fee and his declaration in his office on Monday, February 28, 1966, except upon "clear and satisfactory proof". Of course, the burden of proof rests on Christian. By the term "burden of proof", as we now use it, we mean Christian's duty to establish the truth of his contention by the quantum of evidence the law demands in a case of this nature. Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28; Nelson v. Hammett, Mo., 189 S.W.2d 238. The true measure of the quantum of evidence the law demands in mandamus proceedings is that a litigant seeking the writ must prove that he has a clear and specific right to what has been refused him and he must show himself possessed of a clear legal right to the remedy of mandamus. Mandamus does not issue in doubtful cases. State ex rel. Phillip v. Public School Retirement System of City of St. Louis, 364 Mo. 395, 262 S.W.2d 569; 19A Mo. Digest, Mandamus, ■ But this rule governing

mandamus proceedings does not require us to approach the issue we must resolve in a state of trepidation that will lead us to deny Christian relief unless he has established his right to it as a mathematical certainty. If, on this record, we are clearly convinced, and have no tenable doubt, that Christian filed his receipt for the statutory $25.00 fee and his declaration of candidacy with the clerk on Monday, February 28, 1966, he is entitled to our peremptory writ and we cannot deny it merely because the evidence is conflicting and others arguing the case are able to evolve arguments against the result our own views constrain us to reach.

Before discussing what is really in controversy between Christian and the clerk, it is worthwhile to notice what cannot be the subject of controversy as we view this record. On Monday, February 28, 1966, the day Christian claims he legally filed his candidacy with the clerk, he paid the statutory $25.00 fee to Kenneth Wright, Treasurer of the Democratic Central Committee of DeKalb County, and took his receipt for this payment. This payment was made by check and this check was paid by the bank on that same day and it is before us. Before us also is an affidavit of the treasurer that the duplicate receipt on file in his office shows that Christian "filed his payment on February 28, 1966, and the notation appearing thereon 'filing fee—presiding judge'". This affidavit is in the record with no objection. A duplicate copy of the original receipt is also before us. The record also establishes, and it is not denied, that on the following day, Tuesday, March 1, 1966, Christian delivered to the DeKalb County Record-Herald, a weekly newspaper published in that county on each Thursday, a written announcement that he had filed as a candidate for Presiding Judge of the County Court of DeKalb County. A copy of this newspaper carrying Christian's announcement, and published on Thursday, March 3, 1966, is before us, and it is in the record with no objection. We regard all of these facts as established beyond argument. Accordingly, the only controversy

remaining is whether Christian legally filed with the clerk as a Democratic candidate for nomination for the office of Presiding Judge of the County Court of DeKalb County in the approaching August 2, 1966, Democratic primary by delivering to the clerk on Monday, February 28, 1966, his written declaration of his candidacy and the receipt of the treasurer of the Democratic County Central Committee of DeKalb County showing that he had paid that officer the statutory fee of $25.00. Christian swears that he did so and the clerk swears that he did not.

On Monday, February 28, 1966, the day Christian paid the treasurer the statutory $25.00 fee and took his receipt, and the day he says he filed his declaration of candidacy, the county court was in session. Christian had been elected Presiding Judge of the County Court in 1962 and was then serving in that capacity. He says that immediately upon paying the statutory fee and taking the receipt he went to the county court to participate in the transaction of the court's business of that day. The minutes of the court admittedly show that the court was in session that day and that Christian and his associate judges and the clerk were all present. He says that when the court's business was finished he followed the clerk into his office, and laid his receipt for the statutory $25.00 fee on the clerk's desk and told him he wanted to file for Presiding Judge of the County Court. The clerk then placed a blank form of declaration in his typewriter, filled in all the blanks and handed it to Christian who signed it and laid it with the receipt on his desk. When Christian left the county clerk was still sitting at his desk with the receipt and declaration on the desk before him. This was the last time Christian saw his documents. During this entire procedure, only Christian and the clerk were present. The clerk in his own testimony stated that the procedure described by Christian on this occasion was the procedure he always followed in accepting declarations of candidacy from all candidates and that it had never varied during the eleven and one-half years he had been county clerk.

The clerk advances the theory that Christian did not know that he was required to file a declaration of his candidacy and that he thought his candidacy was legally established when he paid the statutory $25.00 fee to the treasurer and took his receipt. This theory leaves us a little more than incredulous. In the first place, Christian testified to an amazing familiarity with the procedure employed by the clerk in accepting declarations of candidacy from candidates for one totally ignorant of the requirement for a declaration. In the next place, Christian testified emphatically and repeatedly that he did not think that all he needed to do to become a candidate for presiding judge was to pay the county committee treasurer $25.00 and take his receipt. Questioned about this on cross-examination, here is one sample of his answers: "Oh, no, no, no, no, I filed back in '62 (for Presiding Judge of the County Court), I had been on the Democratic Committee now for years. I had to file every two years. I knew I had to file a declaration of filing, or whatever you call it, candidacy." While he was cross-examined rigorously on this subject, his testimony still stood unshaken when he was dismissed from the stand. We cannot adopt the theory that he was not aware that he was required to file a declaration of his candidacy. He is a seasoned politician with years of experience, a frequent candidate, and he is now finishing his fourth year as Presiding Judge of the County Court. To hold that he did not know he needed to file a declaration of his candidacy with the clerk is to belie his clear and persuasive testimony, uncontradicted by any witness, and his appearance and demeanor on the stand before us as a man who could not have had his quality and length of political experience and still remain in ignorance of this rudimentary fact of politics. He may not be a total political sophisticate but he is certainly not a political neophyte. On this record, we must reject this theory, and we do.

The next theory suggested is that Christian, if he knew he was required to file a declaration of candidacy, simply forgot to do so. We have already set forth the admitted steps Christian took on Monday, February 28, 1966, and on the following day. We repeat that on that Monday he paid the $25.00 statutory fee to the treasurer of the Democratic County Central Committee and took his receipt. The following day he delivered to the local newspaper a written announcement that he had filed as a candidate for Presiding Judge of the County Court. To us it seems incredible that Christian would do these admitted things, knowing he was required to file a declaration of candidacy with the clerk—and we hold he knew he had to do it—and forget to file that declaration on Monday, February 28, 1966, while in the court house with the county clerk available, and then continuously fail to remember thereafter that he had not filed until the statutory deadline for filing declarations, the last Tuesday of April preceding the primary, April 26, 1966, had arrived and gone by and until the clerk advised him on the following day, April 27, 1966, after the deadline for filing, that he had failed to file. On this record we must reject this theory, and we do. On the other hand, to us it is quite credible, as Christian argues, that he did file his declaration and receipt with the clerk on Monday, February 28, 1966, and that the clerk simply lost or misplaced it and forgot the whole occurrence under the press of his other affairs. We notice that Christian makes no charge of wrongdoing against the clerk. In his brief he expressly exonerates him.

This is an unfortunate controversy between two respected public officials of DeKalb County. As we view this record, neither of these officials charges the other with deliberate falsification. Each does charge the other with statements prior to the trial inconsistent with his testimony at the trial. In our view, no useful purpose would be accomplished by analyzing in detail the force and effect of these inconsistent statements in this opinion, thereby increasing the ill-feeling between these officials which the record discloses already exists because of this controversy. As observed, all of the evidence presented by both officials was heard by the full membership of this court. We were in a position to weigh the force and effect of the inconsistent statements as we observed the witnesses for both sides giving their testimony. Since that time we have been furnished with a complete transcript of all of the evidence presented and we have had a further opportunity to analyze the entire record and the force and effect of these inconsistent statements. Our analysis supports the ruling we make.

■ We hold that Christian has sustained the burden of proof resting on him in this controversy and established the truth of his contention by the quantum of evidence the law requires in a case of this nature, that is to say, he has clearly convinced us, on this record, and left us with no tenable doubt, that he filed his receipt for the statutory $25.00 fee and his declaration of candidacy with the clerk on Monday, February 28, 1966, both in compliance with all legal requirements.

He is entitled to our peremptory writ of mandamus and it is ordered that it issue. The costs of this proceeding are taxed against respondent.

All concur.