BARTON COUNTY ROCK ASPHALT COMPANY, A CORPORATION, APPELLANT, v. THE CITY OF FAYETTE, MISSOURI, A MUNICIPAL CORPORATION, RESPONDENT.—155 S. W. (2d) 771.

Kansas City Court of Appeals. November 3, 1941.

506

John D. Taylor and Combs & Combs for appellant.

*J. A. Collet* and *A. W. Walker* for respondent.

508

SPERRY, C.—Barton County Rock Asphalt Company, a corporation, plaintiff, sued the City of Fayette, Missouri, a municipal corporation, defendant, for the sum of $3933.81, claimed to be due on account of rock asphalt, a street paving and repairing material, shipped 'to defendant. The trial court instructed a verdict for defendant and plaintiff appeals. We shall refer to the parties as plaintiff and defendant, in the order mentioned above.

The record discloses that defendant's city council, with the mayor in attendance, met in regular session on July 5, 1938, and adopted a resolution which authorized the mayor to solicit the aid of the Federal Government, through its WPA or its FWA agencies in improving streets located in said city; that, thereafter, a WPA project providing for improvement of streets by grading and surfacing same with rock asphalt was before the mayor and council of defendant and was, by that body, considered at a meeting held July 25, 1938; that an ordinance was duly adopted at said meeting on July 25, providing that if said project so considered should be approved and constructed by the Federal Works Progress Administration the city would, for a period of ten years thereafter, maintain said streets so constructed; that said proposal or project was in writing and purported to itemize the cost thereof; that there appeared therein figures indicating that material and supplies to be used in said project would be provided through funds to be furnished by "Sponsor," defendant, and by the Federal Government; and that, attached to said proposed project, and forming a part thereof, was "Sponsoring Certificate," bearing the following at the conclusion thereof:

"Sponsor's agent (Type or print name) A. D. Patison (Signature)
"A. D. Patison, (Title) Mayor (Date) July 26-38 Address
"Fayette Mo"

There was introduced in evidence, over objection of defendant, two written instruments dated September 18, 1938, which were orders to plaintiff to ship 482 tons of rock asphalt to defendant, freight prepaid, at a price of $6.25 per ton plus freight and sales tax. Said instruments were signed:

> "A. D. Patison, Mayor,
> "C. C. Daniels,
> "Chairman Street & Alley Com."

The evidence tended to prove that the material was delivered and used on certain gravelled and rocked streets of defendant; that holes therein caused by weather and traffic were filled, after which said streets were completely resurfaced with said material; that the work on said streets was done by Federally paid labor, under the above mentioned WPA project; that said material was satisfactory for the purpose for which it was used; that the completed work was satisfactory; that the price charged for the material was reasonable; that plaintiff paid the freight on the material, amounting to more than $800, and will be compelled to pay sales tax when the sale price is collected; that demand had been made for payment of the account and payment had been refused; and that other materials used in said construction had been paid for by the city.

The only evidence offered by defendant was a telegram and a letter, both delivered to plaintiff before shipment of the merchandise was made. The telegram is in words as follows:

"Ship material at your own risk. Convinced contract illegal.
"Letter follows.          "Chairman of Board,
                          "R. L. Burnham, Alderman."

The letter advised plaintiff that the signors, Vodra Phillips, R. L. Burnham and B. I. Lawrence, all of whom were members of defendant's council, considered plaintiff's contract with Mayor Patison, for sale of rock asphalt, to be illegal and of no effect, and that there was no ordinance in effect authorizing the mayor to execute the contract.

These instruments were introduced by defendant in connection with the cross-examination of plaintiff's secretary-treasurer, who was a witness for plaintiff. No objection was made to the introduction in evidence of the telegram. Objection was made to the introduction of the letter and said objection was, at first, sustained; but thereafter plaintiff re-examined the witness and, over objection of defendant, elicited testimony to the effect that plaintiff was authorized verbally, by Mayor Patison, after receipt by it of the telegram, to ship the asphalt. Plaintiff urges that the admission of the letter was error because not shown to have been signed by any authorized officer of

the city, and that it was not properly identified. We think that, under the circumstances, the admission of the letter in evidence was not error.

Plaintiff's secretary-treasurer admitted its receipt by plaintiff at its main office prior to shipment of the asphalt. It bore the signature of Burnham, who signed the telegram which was admitted without objection, and which telegram referred to a letter which would follow. It was merely cumulative evidence, of the same quality as that of the telegram; and defendant opened the way for its admission by offering testimony as to what the mayor and Daniels told the witness on the street after receipt by plaintiff of Burnham's telegram.

The record fails to show that defendant's board neither enacted nor considered any ordinance or resolution specifically authorizing the repairing or resurfacing of Watts Avenue and Walnut Street, the two streets on which the asphalt was used, or authorizing the purchase by any one of rock asphalt or any other street surfacing or repairing material. The property abutting the streets upon which this material was used was owned in part by defendant and, in part, by private citizens of Fayette.

Plaintiff contends that it made a submissible case on the theory that the statutes give to defendant the power to pave, macadamize, repair and otherwise improve its streets, and to pay therefor out of its general revenue funds; that, having such power, it attempted to exercise it, (although, perhaps, in an unauthorized manner) and actually caused the work to be done, and received and used the asphalt; and that it is now estopped to set up, as a defense to this action, any irregularity in the proceedings leading up to the receipt and use of the material furnished by plaintiff. Defendant contends that it wholly lacked authority to pave, macadamize, repair or otherwise improve its streets *and pay for same out of its general revenue*; that its board enacted no ordinance or resolution authorizing same to be done; and that the act of the mayor and of one member of the council in ordering and receiving the asphalt was not authorized by ordinance, resolution, or other authority of the council, either verbally or in writing; and that, therefore, defendant is not estopped to defend this action.

Section 7047, Revised Statutes of Missouri, 1929, provides authority for defendant "to *enact ordinances* . . . to open and improve streets, avenues, alleys and other highways . . .," and that "Such ordinances . . . shall authorize the particular work to be done or improvements to be made, and shall specify the general character and extent thereof, the material to be used therein and in the alternative, if desirable, and the manner and regulations under which any such public work or improvements shall be executed." (Italics ours.) This section is the basic authority granted to cities of the 4th class to lay out and improve streets; but it does not refer to the method and manner

of payment for such improvements. It does provide, however, that such improvements shall be authorized by ordinance which ordinance shall specifically designate the work to be done, the materials to be used, and the manner in which said work shall be executed. It not only confers the power but also limits the manner of its exercise.

Section 7048, Revised Statutes of Missouri, 1929, authorizes the payment of the cost of bringing to grade of streets, alleys, etc., the building of bridges, culverts, public sewers and footwalks, out of the general revenues. It will be noted that such items as are herein mentioned are of the type generally calculated to be of prime importance to the public, as distinguished from those generally considered of special value to the abutting landowners. It authorizes expenditure of general revenues for securing the bare necessities, only, of vehicular and foot traffic.

Section 7049, Revised Statutes of Missouri, 1929, Section 7200, Revised Statutes of Missouri, 1939, provides that the cost of construction of sidewalks shall be charged to abutting property and shall be paid for by special assessments against said property.

Section 7050, Revised Statutes of Missouri, 1929, provides for sprinkling, oiling, repairing, surfacing and resurfacing of streets. It is provided therein that the cost of such work shall be paid by special assessments and the issuance of tax bills against abutting property. This section is construed in the case of City of Salisbury v. Schooler, 331 Mo. 291.

Section 7051, Revised Statutes of Missouri, 1929, provides that the cost of paving and macadamizing, including curbing, guttering and excavation of streets, and the *repairing* of same, shall be levied as a special assessment upon the abutting property.

Section 7052, Revised Statutes of Missouri, 1929, authorizes a city to issue bonds for the purpose of paying the cost of paving, gravelling, macadamizing, guttering and curbing any street, alley or highway within the city, provided that issuance of said bonds have been previously assented to by two-thirds of the voters of said city.

Section 7053, Revised Statutes of Missouri, 1929, provides that the cost of macadamizing or paving the squares and areas formed by street intersections of streets to be paved or macadamized, shall be levied as a special assessment, proportionately, against the property in the adjoining blocks.

Section 7060, Revised Statutes of Missouri, 1929, provides, in part, that no formality shall be required to authorize the repair of any street paving, curbing, guttering, macadamizing, or the reconstruction of same, *and making special assessments* therefor; that all costs thereof shall be borne proportionately by the abutting property, including that of any city owned property; and that tax bills shall be issued therefor. It provides, however, that any of said improvements to be paid for by the city (that is, the proportionate part of the cost

to be borne by any city owned property) "may be paid for by said city out of the general revenue funds if the council so desires," but not ". . . *unless the proceedings of the city for the same specify that payment will be made out of the general revenue funds of said city.*" (Italics ours.)

The above are all of the sections of the statutes to which our attention has been directed, or that we have found, that bear on the question here presented. The sections summarized herein provide a very complete scheme for the opening, improvement and maintenance of public streets. The powers of the city are clearly limited and defined therein. It may lay out and open public streets, alleys, and highways within the city, and it may pay the cost of opening, improving, and repairing same as follows:

(a) The cost of opening, laying out, and grading, and for building bridges, culverts, public sewers and footwalks across same, may be paid from general revenues.

(b) For gravelling, rocking, macadamizing, paving, and the reconstruction or repair of such streets as have been gravelled, rocked, macadamized or paved, the cost must be paid proportionately but abutting property owners, except where a bond issue has been voted for the purpose, as follows:

1. On property owned by a person other than the city, by special assessments and tax bills levied against the property;

2. On property owned by the city it may be paid by issuance of tax bills, or, under certain circumstances, it may be paid out of the general revenues.

We therefore hold that defendant lacked the power to order the improvement of its streets, in the manner that they were improved, and to pay therefor out of general revenue funds. Not only was it wholly lacking in such power, but it did not attempt to exercise same beyond a mere superficial discussion of the matter by its board. It did, through its council, authorize the mayor to *solicit* the Federal agencies to improve its streets; but the council did not expressly approve of any such project that may have been submitted. At least the records do not establish that it did approve same, or that it authorized the mayor to sign and approve thereof. In no event did the council enact, or even consider, or have before it, any ordinance or resolution, such as is mentioned in the statutes, providing for the improvement of its streets. It never did express its intent, either formally or informally, to expend any money for materials to be used on its streets.

The council had the power to improve its streets by placing rock asphalt on them; but it did not have the power to order the cost thereof to be paid out of the general funds excepting only as to such portions as abutted its own property. It had the power, if it had seen fit to exercise it, to order the improvement made in a legal manner;

but it did not attempt to exercise such power, or any power at all. It had the power (under certain conditions) to buy asphalt for use in the improvement of its streets; but it made no attempt to purchase, nor did it make any effort whatever to authorize any one to purchase, as its agent, said asphalt for any purpose. The city itself is the defendant, not the board of aldermen. The board of aldermen is not the *alter ego* of defendant; it is but the authorized governing body of the city. [43 C. J. 237.] Defendant could not act except through its authorized governing body, 43 C. J. 237; and it did not act at all with reference to the matter here before us.

The situation here presented is unlike that prevailing in Haskins v. City of De Soto, 35 S. W. (2d) 964, upon which plaintiff relies. In that case, while no formal ordinance had been enacted, yet the council had specifically authorized the mayor, *in writing*, to bind the city in a contract which was thereafter entered into in writing. In the case at bar the council, neither verbally nor in writing, authorized any one to bind the city in this matter.

Plaintiff urges that defendant is estopped to deny its liability. It relies on County of Cole v. Trust Company, 302 Mo. 222, l. c. 240; Mullins v. Kansas City, 268 Mo. 444, l. c. 459; Edwards v. Kirkwood, 147 Mo. App. 599, l. c. 615. These decisions all deal with situations where the proper governing authorities had previously attempted to exercise a power not prohibited to them, by contracting with plaintiff, but had exercised such poyer in an improper manner; and the municipalities had received benefits thereby, to the detriment of the other contracting party. In the case at bar defendant did not agree to buy plaintiff's asphalt, or even indicate to plaintiff it would do so. Plaintiff must have known what the records disclosed regarding this transaction, and is bound to have known the law relating thereto. Under the statutes which prescribe the conditions under which streets may be macadamized, resurfaced or repaired, excepting only where a bond issue has been voted, which was not done here, the abutting property owners, and not the corporation, are the beneficiaries of such improvements. A small portion only of the streets improved was abutted by property owned by the city; the remainder was abutted by property owned by private individuals. Consequently, it cannot be said that defendant, itself, received and retains the benefits of this transaction. The benefits were obtained by strangers to this lawsuit. The facts here do not establish the defense of estoppel.

The judgment is affirmed. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.