HOMER FRAGO, W. N. PRICE, WALTER SCHMALZ, E. E. SUTTERFIELD, GEORGE EICHENBERGER, LEE HUFF, HARRY HUFF, C. O. PROVINCE and DAVE PROVINCE, Appellants, v. THE CITY OF IRONDALE, MISSOURI, a Municipal Corporation, GLENN FORINASH, Mayor of said City, and EARL SPIER, City Clerk of said City, Respondents, MISSOURI PETROLEUM PRODUCTS COMPANY, Intervenor, No. 43427 —263 S. W. (2d) 356.

Division One, January 11, 1954.

*Richeson & Carr* for appellants.

502

*R. B. Manley* for respondents. *Kerth, Thies & Schreiber* for intervener.

LOZIER, C.—Plaintiffs sued to cancel tax bills, totaling $10,202.75, issued by defendant city against plaintiffs' properties for street work. Plaintiffs have appealed from an adverse judgment. This court has jurisdiction as the record affirmatively shows that the "amount in dispute, exclusive of costs," exceeds $7500. Art. V, Sec. 3, Cons., 2 V.A.M.S., p. 31; Cooper v. School District of Kansas City, 362 Mo. 49, 239 S. W. 2d 509.

Plaintiffs-appellants here contend that the ordinances under which the tax bills were issued unlawfully provided that the costs of the work be paid out of the city's general funds instead of by a special tax assessed against the adjoining properties; and (as the "aye" and "nay" votes of the members of the board of aldermen, on final passage of the ordinance, were not initially entered in the minutes as required by law) that the trial court erred in ordering a nunc pro tunc correction of the minutes to show the votes by "ayes" and "nays."

The first statute involved is Sec. 7200 (all section references are to RSMo 1939 unless otherwise stated), later Sec. 88. 687, RSMo 1949, V.A.M.S., repealed and substantially re-enacted in Sec. 88.665,

RSMo 1949, V.A.M.S., H.B. No. 353, 1953 Laws, p. 312. Sec. 7200 authorized the board of aldermen of a fourth class city (as is defendant city), by ordinance, to "cause" the city's streets "to be sprinkled, oiled, repaired, surfaced and resurfaced and the cost thereof to be provided for and defrayed by a special tax to be assessed in favor of the city on the adjoining property fronting or bordering on the streets * *. * where such sprinkling, oiling * * * is proposed to be done, in proportion that the linear feet of each lot * * * bears to the total number of linear feet of all property chargeable with the special tax aforesaid * * *. The above work shall be done by said city and an accurate account of the cost thereof kept by said city or shall be contracted for annually by the board of aldermen at such time and under such terms as shall be provided by ordinance, and the city shall be divided into convenient sprinkling, oiling * * * districts for the above purpose, and each district shall be let separately. The special tax bills spoken of shall be and become a lien on the property charged therewith from and after the commencing, oiling * * * of such streets * * * under the provisions of an ordinance provided therefor, * * * and may be collected of and from the owner of the land in the name of and by the city * * * and they shall be issued and collected in the manner hereafter provided by ordinance; provided, that in no case shall the cost of such sprinkling, oiling * * * exceed sixty cents per front foot per annum upon the property abutting upon any street * * *."

On September 6, 1949, the board of aldermen (by a series of ordinances the titles to which referred to Sec. 7200) created and fixed the boundaries of four districts, "by authority of the provisions of Section 7200 * * *," appointed an acting city engineer and directed him to prepare plans, specifications and estimates of cost" for the work and submit same to the board, "said improvement to be performed as may hereafter by ordered by" the board "under authority of Section 7200 * * *." In a second series of ordinances (the titles to which also referred to Sec. 7200), the engineer's plans, specifications and "estimate of the cost for furnishing of the labor and materials and doing the work, and other costs which will be assessed against the lots * * *" in the particular district were approved; the mayor was authorized, upon acceptance of a proposal by the board for furnishing the materials, "to purchase the necessary materials according to such proposal for the purpose of repairing, resurfacing and oiling of said street, all as provided in Section 7200 * * * and in accordance with the plans and specifications aforesaid"; and the engineer was directed to keep a record of the costs of the labor and materials furnished by the city and the printing, engineering, supervision and other expenses incurred by the city, and "upon completion of said improvement to report said items of cost to the mayor and the board of aldermen * * *. Payment for the furnishing of the labor and materials, as well

as the other costs and expenses of the city, shall be made by special tax to be assessed in favor of the city against all of the lots, tracts and parcels fronting or bordering on said public streets'' in the particular district ''in proportion that the linear feet of each of said lots, tracts or parcels fronting or bordering on said public streets bear to the total number of linear feet of all the lots, tracts and parcels chargeable with the special tax for said improvements in said district; said special tax bills shall bear interest and become a lien on said lots, tracts and parcels as provided by Section 7200 * * *; and it is further ordered that no special tax bill shall be levied against any lot, tract or parcel within said district for an amount in excess of 60 cents per linear foot.''

As to each of the four districts, a third series of ordinances recited that the Missouri Petroleum Products Company (instant intervenor) had submitted the lowest and best proposal ''for the furnishing of materials for the repairing, resurfacing and oiling of public streets in'' the particular district, ''in accordance with authorization by Ordinance No. * * * (relating to that district) approved the 6th day of September, 1949,'' the mayor was authorized to accept ▆ such proposal ''for the furnishing of the aforesaid materials in the manner approved by * * * (the last mentioned ordinance) and to pay for the same out of the general funds of'' the city.

Upon behalf of the city, the mayor executed the contract with intervenor. Intervenor furnished and applied the materials. (Apparently, intervenor has been paid $1533.42. Plaintiffs-appellants state in their brief that the city ''did not have general funds which could be used to discharge the alleged indebtedness for materials provided by'' intervenor.) As to each district, the city engineer certified to the board that *the city* had ''furnished all the labor and materials required'' for the work in each district ''under and by virtue of Section 7200 * * * and authorized'' by the particular September 6, 1949, ordinance, viz., ''labor and materials *furnished by the city* under contract,'' a certain amount. In each instance, the amount so certified was that incurred by the city under its contract with intervenor. The report recited that ''no charge'' was made for the items of engineering, supervision, printing, legal services or ''collector's fee.''

On February 7, 1950, the board passed four ordinances levying the special assessment against the adjoining properties and directed the clerk to issue the tax bills *in favor of the city* in accordance with the computations made by the city engineer, whose respective reports, referring to Sec. 7200, were set forth in full in the ordinances. The February ordinances, and the titles thereto, referred to the applicable September ordinances.

▆ Plaintiffs-appellants filed their suit on August 17, 1950, ten months after completion of the work and six months after the issuance

of the tax.bills. They do not contend that the work was not done according to plans and specifications. "In such a situation a court of equity will not and should not annul the tax bills unless the proceedings of the city council were so defective as to render the tax bills void." Cunningham v. City of Butler, (Mo.) 256 S. W. 2d 767, 768[1].

We do not agree with plaintiffs-appellants that the September ordinances provided that the cost of the *work* was to be paid for out of the city's general fund and that the February ordinances (levying the special tax and authorizing the tax bills) "was apparently an afterthought." The September ordinances, by repeated express references to Sec. 7200, clearly show that, from the very beginning, the board—in creating the districts, in causing the streets to be oiled, in buying and furnishing the materials—provided that payment of all of the costs was ultimately to be made by tax bills as required by Sec. 7200.

Plaintiffs-appellants argue that the February ordinances were void because they "were invalid attempts to assess special taxes to pay for materials contracted for and to be paid as an obligation of the general funds of the city * * * and that the mayor was without authority to enter into the contracts" with intervenor. The September ordinances expressly provided that the work was to be done under Sec. 7200 and that "the cost for the *furnishing of the labor and materials and doing the work,* and other costs" (that is, all costs incurred by the city in "causing" the work to be done) would "be assessed against the lots," etc. Those ordinances expressly approved the purchase *by the city* of the materials from intervenor to be paid out of the city's general fund. Those ordinances expressly provided that "payment of (i.e. reimbursement to the city for the costs paid by it for) the labor and materials, as well as the other costs and expenses to the city shall be made by a special tax," etc. Plaintiffs-appellants have not cited, and we have not found, any statute or decision making unlawful payments by the city, out of its general fund, for materials, labor or other items of cost (such as engineering, supervision, printing, advertising or legal services) which it furnishes for the work done under Sec. 7200 and for which payments the city is to be reimbursed by tax bills to be subsequently issued. Note that under Sec. 7200: The city has power "to cause" the work to be done and to provide for payment of "the cost thereof" by the special tax; that the "work shall be done by the city and an accurate account of the cost thereof kept by said city or shall be contracted for annually by the board of aldermen at such time and under such terms as shall be provided by ordinance"; that the tax bills become a lien after the "commencement" of the work "under the provisions of an ordinance provided therefor," are prima facie evidence of the properties' liabilities, and "may be collected * * * in the name of and by the

city as any other claim * * * and shall be issued and collected in the manner provided by ordinance."

However, the proceeds of the special tax levy are not available until the work has been done. So, if the city itself does the work (as it is expressly authorized to do), it must either expend moneys in its general fund for the necessary materials and labor, or, as here, execute a contract for the furnishing of the materials "in place." Believing that Sec. 7200 contemplates such a procedure, we hold that the instant city, in the exercise of its powers and the performance of its duties under that section, was authorized to contract for the materials and to obligate moneys in its general fund for the payment thereof.

It follows that the contract, executed by the mayor under an express authorization from the board of aldermen, was valid. Barton County Rock Asphalt Co. v. City of Fayette, 236 Mo. App. 505, 155 S. W. 2d 771, cited by plaintiffs-appellants, is inapplicable. No tax bills were involved and no ordinances had been passed authorizing the mayor to sign the contract for the materials furnished by the plaintiff. The record failed to show that the board of aldermen "enacted or considered any ordinance or resolution specifically authorizing the repairing or resurfacing of * * * the two streets on which the asphalt was used, or authorizing the purchase by anyone of rock asphalt or any other street surfacing or repairing material." 155 S. W. 2d l.c. 772-773.

Plaintiffs-appellants next contend that the trial court erred in sustaining defendants' motion for a nunc pro tunc correction of the minutes of the September and February meetings of the board. Among the provisions of Sec. 7166 (now Sec. 79.130, RSMo 1949, V.A.M.S.) is: "No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it, and the ayes and nays be entered on the journal." One of the grounds relied upon in plaintiffs' petition was the failure of the minutes of the two meetings to show the aldermen's votes by "ayes" and "nays" on final passage of the bills. In their answer, defendants alleged that, in fact, upon final passage of each of the ordinances, the aldermen (naming them) had all voted "yea" and that there were no "nays"; but that the city clerk, in writing the minutes, had inadvertently failed to record the votes in the manner in which they had been actually taken. Defendants asked the court to order the records corrected. At the hearing, it appeared that the minutes of the September meeting showed the presence of the mayor and all four aldermen and that the minutes of the February meeting showed the presence of the mayor and three aldermen (one had resigned in December, 1949). The minutes of both meetings recorded the vote on final passage of the ordinances either as "All members voted in favor of the motion" or

"All voted in favor of said motion." The alderman-city clerk testified that he wrote the minutes of both meetings from notes that he had made during the meetings; that all votes on final passage of the ordinances were by "yeas" and "nays"; that all four aldermen at the September meeting remained throughout the entire session and voted "yea" on final passage of all the ordinances; that the three aldermen at the February meeting remained throughout the entire session and voted "yea" on final passage of all the ordinances; that there were no "nay" votes at either meeting; that the "yea" votes were given both "orally and by raising their right hand." The two other alder men (who were members of the board at the time. of the February meeting), the mayor and a chronic "board meeting attender" testified substantially as had the alderman-city clerk. There was no testimony to the contrary. The trial court ordered a nunc pro tunc correction of the minutes to show the individual "yea" votes of the four aldermen on final passage of each of the ordinances at the September meeting and the individual "yea" votes of the three aldermen on final passage of each of the ordinances at the February meeting and to show that there were no "nay" votes on final passage of each of the ordinances at either meeting.

Plaintiffs-appellants impliedly concede that the uncontradicted evidence clearly showed compliance in fact with the above quoted requirement of Sec. 7166. However, they argue: Upon the initial record, the ordinances were void; plaintiffs so asserted in their petition; "for the trial court to allow amendment after the filing of plaintiffs' petition is to indicate that plaintiffs are entitled to their relief but to deny it arbitrarily." The fallacy of that argument is plaintiffs-appellants' assumption that, by filing their suit, they acquired vested rights to have the city's records remain as originally written and to prevent the city from correcting its records to show the truth—the facts which make valid the instant tax bills.

We agree with plaintiffs that the tax bills were void upon the initial record. In State ex rel. Barkwell v. Trimble, 309 Mo. 546, 274 S. W. 683, 684, we said, that, under the provisions of the statute which later became Sec. 7166, "an ordinance is not an ordinance until the ayes and nays by which it is passed are entered upon the journal. A vote is not a vote until so recorded." That ruling was quoted and applied in Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S. W. 2d. 532, 537[12] (wherein the record was that the "bills * * * were presented for passage, voted upon, passed unanimously by all the trustees present"), and City of New Franklin v. Edwards, (Mo. App.) 23 S. W. 2d 235, 237[1, 2] (wherein the minutes failed to show a record of any vote and merely recited that the bills were adopted) and was followed in Steiger v. City of Ste. Genevieve, 235 Mo. App. 579, 141 S. W. 2d 233, 236[1, 2] (wherein the initial record was that the bills were read three times "and unanimously adopted"). In Cunningham

v. City of Butler, (Mo.) 256 S. W. 2d 767, the original record showed the votes as "5 ayes and no nays."

However, as pointed out in the Steiger case, supra, a board of aldermen has "the inherent power to amend or correct its records to make them speak the truth * * * but the power is said to be broad in cases where through inadvertence or misapprehension, a record has been made up defectively so as not to reveal the actual proceedings that were had," provided no "vested rights or bona fide claims of third persons have meanwhile intervened, which would be entirely defeated should the amendment be allowed"; and the correction may be ordered by the court in the course of litigation challenging the validity of the board's action based upon an apparent failure to comply with the above-quoted provision of Sec. 7166. 141 S. W. 2d l.c. 236-237[3, 4], [5, 6]. In the instant case, the amendments were ordered by the trial court after a hearing in which the facts were shown by uncontroverted evidence. As in the Cunningham case, supra: "It is evident the nunc pro tunc order was proper. * * * It should be noted that the nunc pro tunc entry did not change the record; it merely made the record show in detail what the record already showed in an abbreviated form. The record as it now appears in the office of the City Clerk is sufficient." 256 S. W. 2d l.c. 768[2].

The judgment is affirmed. *Van Osdol* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.