**MISSOURI PUBLIC SERVICE COMPANY,**
a corporation, Plaintiff-Appellant,

v.

**BARTON COUNTY ELECTRIC COOPERATIVE, a corporation, Curless Building, Inc., and Fun Lanes, Inc., Defendants-Respondents.**

No. 7963.

Springfield Court of Appeals.

Missouri.

Jan. 30, 1962.

(Motions for Rehearing or to Transfer Overruled Feb. 13, 1962)

A. E. Elliott, Nevada, E. E. Thompson, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for plaintiff-appellant.

Combs & Combs, Lamar, for defendants-respondents.

STONE, Judge.

In this equitable action, plaintiff, Missouri Public Service Company, seeks to en-join defendants, Barton County Electric Cooperative (hereinafter called the Cooperative), Curless Building, Inc. (hereinafter called Curless), and Fun Lanes, Inc. (hereinafter called Lanes), from erecting or maintaining any facilities for the purpose of enabling the Cooperative to supply electric energy for use in connection with operation of a bowling alley by Curless and Lanes in a newly-constructed building just inside the west corporate boundary of the Village of Lamar Heights, Missouri (hereinafter referred to as the Village). At the close of plaintiff's evidence, the trial court found that plaintiff had "failed to produce evidence to sustain the allegations of plaintiff's petition or to show that the plaintiff is entitled to the relief prayed" and, upon their motions, entered judgment for defendants, from which plaintiff has appealed.

Plaintiff is a public utility engaged in the production, distribution, transmission and sale of electric energy in certain counties of the State of Missouri, including Barton County where plaintiff operates under a certificate of convenience and necessity granted by the Public Service Commission of Missouri under date of January 18, 1938. The Cooperative, organized under "The Rural Electric Cooperative Law" [now Chapter 394, RSMo 1959, V.A.M.S.], is engaged in the production, distribution, transmission and sale of electric energy in Barton County and, by reason of its cooperative status, is within the jurisdiction of the Public Service Commission only to the limited extent provided in V.A.M.S. § 394.160. By order of the County Court of Barton County on May 21, 1951, the Village of Lamar Heights was incorporated [V.A.M.S. § 80.020] and its first board of trustees, consisting of five members, was appointed. V.A.M.S. § 80.040. It is said (without contradiction) that the population of the Village was then "approximately 100"; and, from the last United States census of which we take judicial knowledge [Varble v. Whitecotton, 354 Mo. 570, 190 S.W.2d 244, 246(4); State at inf. McKittrick ex rel. Martin v. Stoner, 347

Mo. 242, 146 S.W.2d 891, 894(11); State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 985, 70 S.W.2d 52, 54(6)], we find that in 1960 the inhabitants of the Village numbered 113. The Village lies against, and as if it were a protuberance on, the west side of the City of Lamar. The plat of the Village shows that its corporate limits encompass an irregular area of not less than 320 acres, elongated north and south for a distance of one and one-half miles and lying on both sides of north-and-south U. S. Highway 71. The east boundary of the Village (which is also the west boundary of the City of Lamar) is a serpentine north-and-south line following the meanderings of Muddy Creek and located 100 feet east of the center thereof. The west boundary of the Village is a straight north-and-south line located 256 feet west of, and running parallel with, the center line of Highway 71.

Prior to incorporation of the Village in 1951, plaintiff had rendered electric service to inhabitants of the area and, after incorporation, continued to do so. Plaintiff sought and (so it insists) obtained "a nonexclusive franchise" in the Village "by enactment and approval of Ordinance No. 1" (hereinafter referred to as the ordinance) at a meeting of the board of trustees of the Village held on March 27, 1953, and by plaintiff's subsequent written acceptance of the ordinance on or about April 3, 1953. On timely objection, the ordinance was excluded from evidence by the trial court because the minutes of said meeting of the board of trustees did not reflect compliance with the mandatory requirements of V.A.M.S. § 80.110 that "no bill shall become an ordinance unless on its passage a majority of all the members of the board of trustees vote therefor, and the yeas and nays be entered upon the journal." Of this, more anon. We note briefly that the basic grant, which the ordinance purported

to bestow upon plaintiff, its successors and assigns, was "the right, *privileges* and authority to construct, maintain and operate within the corporate limits . . . of the Village . . . an electric light, heat and power system in, along, over, under and across the streets, avenues, alleys and public places in said municipality for the transmission, distribution and sale of electric energy, together with the right, privilege and authority to erect, construct, maintain and operate all necessary poles, conductors, wires, conduits and apparatus in, along, over, under and across said streets, avenues, alleys and public places for such purposes." Other sections of the ordinance provided that the foregoing grant should remain in full force and effect for a term of twenty years, and that, "as additional consideration of the rights and privileges granted" and in lieu of all taxes other than ad valorem taxes, plaintiff would, by acceptance of the ordinance, become obligated to pay to the Village, upon computations at stated times, five per cent of the gross revenue derived by plaintiff from electric service in the Village, excluding revenue derived from municipal service or industrial consumers.

Although the "franchise" which the ordinance purported to confer was essentially a grant of authority to occupy the streets, avenues, alleys and public places in the Village[1] for the contemplated purpose of enabling plaintiff to supply the inhabitants of the Village with electric energy, the only traveled or platted ways in the Village were north-and-south U. S. Highway 71, intersecting east-and-west U. S. Highway 160, and one road branching off Highway 71—"we call it a street" said the chairman of the board of trustees. However, regardless of the nature or extent of the benefit anticipated by or accruing to plaintiff by reason of purported enactment of the ordinance, thereafter plaintiff made,

1. Cf. State ex inf. Jones ex rel. City of St. Louis v. Light & Development Co. of St. Louis, 246 Mo. 618, 650, 152 S.W. 67, 75; State ex inf. of McKittrick ex rel. City of California v. Missouri Utilities Co., 339 Mo. 385, 399, 96 S.W.2d 607, 613, 106 A.L.R. 1169, 1179; Kansas City Power & Light Co. v. Town of Carrollton, 346 Mo. 802, 812, 142 S.W.2d 849, 854 (8, 9).

and the Village accepted, the periodic five per cent payments provided by the ordinance. In the municipal records before us, these payments were identified at different times as a "royalty," as an "allowance for the use of streets and alleys," and as a "commission." But, by whatever names they were designated, the payments constituted in effect the sole source of income for the Village (the only other income after March 27, 1953, having been $8 from "cash contributions" reported on October 26, 1953); and, after rumors of the controversy brewing between the parties to this action had come to the then trustees, their apparent gratitude for plaintiff's payments was reflected by this entry in the minutes of their meeting held on August 8, 1960: "The five per cent commission we are receiving from the Missouri Public Service Co. has certainly been helpful and all the trustees agree that Missouri Public Service Co. has rendered us satisfactory service."

On July 18, 1960, Curless acquired a rectangular tract with a frontage of 331 feet, north and south, along the west side of Highway 71 inside the corporate limits of the Village, and with a depth of 397 feet 5 inches, east and west. Since the front or east line of the Curless tract (which is also the west line of the highway right of way) is 60 feet west of the center line of Highway 71 and since the west corporate boundary of the Village is only 256 feet west of the highway center line, the front 196 feet of the Curless tract is *inside* the Village while the remainder of that tract (i. e., the back or west 201 feet 5 inches) is *outside*. When this action was instituted on August 11, 1960, there was being constructed on

the Curless tract a building approximately 150 feet long, north and south, and 52 feet deep, east and west, so situated that it was entirely *inside* the Village but its rear or west side was only 17 feet east of the west corporate boundary of the Village. This litigation was precipitated by the Cooperative's action in constructing a "new power line 2050 feet long" to "a dead-end pole" set on the Curless tract behind or west of the new building at a point only 21 feet *outside* or west of the west boundary of the Village, at which pole the Cooperative sold, metered and delivered electric energy for use in the new building *inside* the Village. Plaintiff's theory is that it has a franchise by virtue of the enactment of the ordinance and plaintiff's acceptance thereof; that, although such franchise is not exclusive in that the Village might grant similar rights to another, it is exclusive against all who may assume to exercise such rights *without legal authority*; that, as the holder of such franchise, plaintiff is entitled to injunctive protection against all *illegal* competition; and that the action of instant defendants falls within that prohibited category.[2]

■ However, as plaintiff recognizes, this theory depends upon the existence and validity of the ordinance which is said, upon acceptance, to have conferred and constituted the franchise. V.A.M.S. § 80.-080 applicable to towns and villages imposes upon the board of trustees the requirement that "they shall keep a journal of their proceedings." This is a mandatory duty, and the acts and ordinances of a village are evidenced, and may be established, only by the entries and record in

2. Holston River Elec. Co. v. Hydro Elec. Corp., 17 Tenn.App. 122, 66 S.W.2d 217; City of Campbell, Mo. v. Arkansas-Missouri Power Co., 8 Cir., 55 F.2d 560, 562(2, 3); Missouri Public Service Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, 3(1); Arkansas-Missouri Power Corp. v. City of Kennett, Mo., 8 Cir., 113 F.2d 595, 596(1). See also Iowa Southern Utilities Co. v. Cassill, 8 Cir., 69 F.

2d 703, 704(1); Kansas Gas & Elec. Co. v. City of Independence, Kan., 10 Cir., 79 F.2d 32, 35(3), 100 A.L.R. 1479, rehearing denied 10 Cir., 79 F.2d 638; Frost v. Corporation Commission of State of Oklahoma, 278 U.S. 515, 521, 49 S.Ct. 235, 237, 73 L.Ed. 483, 488(2, 3); 64 C.J.S. Municipal Corporations § 1735, p. 158; 43 C.J.S. Injunctions, § 97, loc. cit. 602.

the journal.[3] It "is the one indispensable record of birth and existence. It is the book of life for all ordinances, and, unless their title to existence is clear in that book they must remain in limbo. Their lot is with the lost." City of New Franklin ex rel. Lynch-McDonald Const. Co. v. Edwards, Mo.App., 23 S.W.2d 235, 237; Village of Beverly Hills v. Schulter, 344 Mo. 1098, 1105, 130 S.W.2d 532, 536. In determining what this "indispensable record" must show to establish the "birth and existence" of an ordinance, we turn to V.A. M.S. § 80.110 which provides, in part, that "no bill shall become an ordinance unless on its passage a majority of all the members of the board of trustees vote therefor, and the yeas and nays be entered upon the journal." Emphasizing that this requirement also is mandatory, our appellate courts frequently have issued the blunt warning that a vote on an ordinance is not a vote until the yeas and nays are recorded in the journal.[4]

The only record book kept by the Village (insofar as the transcript discloses) was a "loose-leaf notebook," which contained minutes of meetings of the board of trustees, "financial reports" and "election results." Although the clerk, a witness for plaintiff, who produced this notebook, and opposing counsel alike called it the "minute book," all obviously have regarded and treated it as the "journal" required to be kept by the board of trustees [V.A.M.S. § 80.080] and we shall do likewise. With the existence and validity of the ordinance (upon which plaintiff relies) depending upon what was entered in the journal with respect thereto, we quote in toto the handwritten minutes of the meeting of the board of trustees held on March 27, 1953 (identified as *defendants' exhibit "E"*), when (so plaintiff says) the ordinance was passed and approved:

"A meeting of the Board of Trustees was held March 27, 1953, at Brother Adams Cafe for the purpose of considering Ordinance Number One. This ordinance provides for a five percent royalty from Missouri Public Service *Commission* on gross revenue, except Rock Haven Courts (commercial rates) or any street lighting or municipality. (A record of this ordinance is in the files of the secretary-treasurer). Mr. Sawyer, representative of the Missouri Public Service Company, is not asking for an exclusive franchise but for permission to cross city property rights and to set poles on city property. Payments of royalties will be made on each July first, hereafter.

"Financial Report

"Bank balance . . . . . $22.00
        "Respectfully submitted,
            Harold Tuck /s/ sec'y."

■ Obviously the quoted minutes do not satisfy the mandatory requirements of V.A.M.S. § 80.110 [see the cases collected

---

3. See the following cases dealing with the same mandatory obligation imposed by statute [now V.A.M.S. § 79.150] upon the board of aldermen in a city of the fourth class: Fulton v. City of Lockwood, Mo., 269 S.W.2d 1, 5(5, 6); State ex rel. Barkwell v. Trimble, 309 Mo. 546, 551, 274 S.W. 683, 684; Lebanon Light & Magnetic Water Co. v. City of Lebanon, 163 Mo. 254, 259–260, 63 S.W. 811, 812; Eureka Fire Hose Mfg. Co. v. City of Portageville, Mo.App., 106 S.W.2d 513, 516; City of New Franklin ex rel. Lynch-McDonald Const. Co. v. Edwards, Mo. App., 23 S.W.2d 235, 237; City of Brunswick ex rel. Barkwell v. Scott, 219 Mo. App. 45, 48–49, 275 S.W. 994, 995(1).

4. Village of Beverly Hills v. Schulter, 344 Mo. 1098, 1105–1106, 130 S.W.2d 532, 536–537; Krug v. Village of Mary Ridge, Mo.App., 271 S.W.2d 867, 871(6); Frago v. City of Irondale, 364 Mo. 500, 507, 263 S.W.2d 356, 361(4); State ex rel. Barkwell v. Trimble, supra, 309 Mo. loc. cit. 551, 274 S.W. loc. cit. 684; Steiger v. City of Ste. Genevieve, 235 Mo.App. 579, 584, 141 S.W.2d 233, 236(1, 2); City of New Franklin ex rel. Lynch-McDonald Const. Co. v. Edwards, supra, 23 S.W.2d loc. cit. 237. See also Monett Elec. Light, Power & Ice Co., Inc. v. City of Monett, Mo., 186 F. 360, 366–371 (5), appeal dismissed 226 U.S. 624, 33 S. Ct. 110, 57 L.Ed. 386.

in footnote 4], and plaintiff's counsel do not now so contend. But, their present position, in the language of their brief, is that the quoted minutes (exhibit "E"), *"together with the ordinance and the attachments thereto,* constitute substantial compliance with the statute." (All emphasis herein is ours.) Their reference to "the ordinance and the attachments thereto" is to *plaintiff's exhibit 5* (excluded upon defendants' objections) which includes and is composed of the following, stapled together in the listed order: (1) a typewritten copy of Ordinance No. 1 concluding with recitals of purported passage and approval on March 27, 1953, and bearing the signatures of Thomas Howard, chairman of the board of trustees, and Harold L. Tuck, village clerk; (2) a separate typewritten page quoted marginally,[5] with numerous blanks filled in handwriting (italicized in the marginal copy), but with no caption or signature on this page; (3) another typewritten page also quoted marginally,[6] with the ordinance number inserted in handwriting but again with no caption or signature on this page; and (4) another typewritten page captioned "CERTIFICATE" with some of the numerous blanks filled in handwriting (italicized in the marginal copy),[7] and bearing the signature of Harold L. Tuck, village

---

**5.** "It was moved by *Jack Gawthrop* and seconded by *Thomas Howard* that Ordinance No. *1* be introduced and read one time in full. Motion carried. Ordinance No. *1* was read one time in full.

"It was moved by *Harold Tuck* and seconded by *Thomas Howard* that the rules be suspended and that Ordinance No. *1* be placed on second and third readings by title only. Motion was carried by unanimous vote. Ordinance No. *1* was read the second and third times by title only.

"It was moved by *Harold Tuck* and seconded by *Mrs. Claude Adams* that Ordinance No. *1* be placed upon final passage. Thereupon Ordinance No. *1* was placed upon final passage with the following vote:

"*Mrs. Claude Adams*    Yes        *Mr. Jack Gawthrop*    Yes
*Mrs. Richard Miller*    Yes        *Mr. Harold Tuck*    Yes
*Mr. Thomas Howard*    Yes

"Ordinance No. *1* was declared adopted."

---

**6.**                  *"MOTION NO. 1.*

"I move that Ordinance No. *1* be introduced and read one time in full.

*"MOTION NO. 2.*

"I move that the rules be suspended and that Ordinance No. *1* be placed on second and third readings by title only.

*"MOTION NO. 3.*

"I move that Ordinance No. *1* be placed upon final passage."

---

**7.**                  *"*CERTIFICATE

"STATE OF MISSOURI }
COUNTY OF BARTON } ss

"I, *Harold Tuck*, the duly qualified and acting Village clerk of the Village of Lamar Heights in said County of Barton, and the official custodian of the records of the said Village, do hereby certify that the foregoing is a true, correct and complete copy of Ordinance No. *1*, read three times and passed in the manner required by law at a meeting of the Board of *Trustees of said municipality*, held on the *27th* day of *March*, 1953, approved and signed on the *27th* day of *March*, 1953, and recorded on the *27th* day of *March*, 1953, as said ordinance appears from the records in my office; that the vote of the *Board of Trustees* on said ordinance as cast and recorded on the records in my office was as follows:

"*Mrs. Claude Adams—Yes*        *Jack Gawthrop—Yes*
*Mrs. Richard Miller—Yes*        *Harold Tuck—Yes*
*Thomas Howard—Yes*

"Given under my hand and the corporate seal of said municipality this *27th* day of *March*, 1953.

                       *"Harold L. Tuck /s/*
                       Village Clerk      (Seal)"

clerk, and the word "seal" written and circled by hand.

Witness Sawyer, plaintiff's "municipal relations director" for more than twenty-five years, brought to the village board meeting of March 27, 1953, the papers collectively identified and offered as plaintiff's exhibit 5, but the record does not disclose when, where, by whom, or for what reason these papers were stapled together. In any event, exhibit 5 was "kept with the minutes," *not* attached to the notebook rings or fastened in the notebook, but perhaps laid loosely inside the notebook cover. (We find *no evidence* that exhibit 5 was kept in a pocket of the notebook cover, as suggested by plaintiff's counsel, although in our view of the matter that would not have been significant anyway.) In the course of trial, plaintiff's counsel insisted that item 2 in exhibit 5 (purporting to reflect the procedure followed with respect to the ordinance and the yeas and nays upon final passage) "is a part of the minutes"—"they are the minutes of the meeting"; and the same contention is inherent in plaintiff's appellate position.

The trial court refused to follow plaintiff's counsel and, for at least three reasons, we likewise decline to do so. In the first place, the village clerk, called as a witness for *plaintiff*, agreed on cross-examination that the minutes as recorded in the journal and signed by the clerk (exhibit "E") were "the only minutes of the meeting of March 27, 1953"—"I know of no other minutes." In the second place, the language of those minutes (exhibit "E") disputes and denies plaintiff's contention, in that the minutes dismiss the procedural aspect of presentation and passage of the ordinance with the terse comment, interpolated in parentheses, that "A record of this ordinance is *in the files of the secretary-treasurer*" with no suggestion that such unidentified "record" or "files" were to become or be considered as a part of the minutes. Finally, the "Certificate" in exhibit 5 (item 4 thereof) also disputes and denies plaintiff's contention, in that it is limited and confined to

attestation "that *the foregoing* is a true, correct and complete *copy of Ordinance No. 1,* read three times and passed in the manner required by law . . . and *recorded on the 27th day of March, 1953, as said ordinance appears from the records in my office;* that the vote of the Board of Trustees on said ordinance *as cast and recorded on the records in my office was* . . ." and does *not* state or suggest that any portion of "the foregoing" constituted or was intended to constitute either a part of the minutes of the meeting of the board of trustees held on March 27, 1953, or a part of the "minute book" or journal, or for that matter a part of "the records in my office."

From the transcript as a whole, we are in agreement with this succinct but adequate statement of defendants' counsel in the course of trial: *"That* (referring to exhibit 5) *is a certified copy of what the minutes should show and it is not the minutes."* V.A.M.S. § 80.110 clearly contemplates and uncompromisingly demands that "the yeas and nays be entered upon the journal." This is a legislative mandate which we may not abrogate, annul or abolish by judicial fiat, and which we will not render nugatory or fritter away by artifice, device or subterfuge. "If the ordinance in fact was passed and no record was made of the matter, then plaintiff is in the unfortunate condition of every other suitor in court who makes a claim that he cannot support." City of Brunswick ex rel. Barkwell v. Scott, 219 Mo.App. 45, 49, 275 S.W. 994, 995; City of New Franklin ex. rel. Lynch-McDonald Const. Co. v. Edwards, supra, 23 S.W.2d loc. cit. 237. Without further belaboring the subject, we conclude that plaintiff did not establish the existence and validity of the ordinance, and that the trial court did not err in excluding exhibit 5 and in entering judgment for defendants.

Plaintiff also complains of error in the overruling of its "Motion for an Order Directing the Village Clerk of Lamar Heights, Missouri, to Correct the Public

Record Nunc Pro Tunc," which said motion was filed on December 2, 1960, more than ten weeks after judgment had been entered on September 21, 1960. The instant record strongly suggests that, in fact, the ordinance was passed and approved at the meeting of the board of trustees held on March 27, 1953, and that the then clerk inadvertently failed to enter upon the journal the recitals and record as to the procedure followed in presentation and passage of the ordinance, including the yeas and nays upon final passage; and recitals in subsequent minutes [8] persuasively indicate that the village officials in good faith have entertained and acted on the belief that a "franchise" was granted to plaintiff and have made no effort to deny, repudiate or evade such grant. So, it may be that, in a direct proceeding to make the record speak the truth, plaintiff might establish that the board of trustees of the village actually did that which is recited in item 2 of plaintiff's exhibit 5 and might obtain an appropriate decree for recordation of that which, in fact, was done but was not recorded in the journal.[9] But "(t)he rule is well settled that where the statute requires a municipal corporation to keep a record of its corporate acts, such acts, when called in question in a *collateral proceeding,* can be shown only by the records of the corporation." State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 299, 23 S.W.2d 167, 171(7); Fulton v. City of Lockwood, Mo., 269 S.W. 2d 1, 6; State ex rel. Marcum v. Sappington, Mo.App., 261 S.W.2d 385, 389(2). That rule is applicable and controlling here. Fulton v. City of Lockwood, supra, 269

S.W.2d loc. cit. 5(7), 6(9), and authorities there cited. The cases cited by instant plaintiff [Cunningham v. City of Butler, Mo., 256 S.W.2d 767, 768(2); Frago v. City of Irondale, 364 Mo. 500, 263 S.W.2d 356, 361(5)], in each of which the city was a party and itself sought leave to make nunc pro tunc correction, do not support this assignment of error. Plaintiff's after-trial motion for nunc pro tunc correction properly was overruled.

The judgment should be and is affirmed.

RUARK, P. J., and McDOWELL, J., concur.

---

3. E. g., "since we have a franchise with Mo. Public Service Company, etc." in the minutes of the meeting of the board of trustees held on April 19, 1957; and "since Missouri Public Service Company has the franchise from Lamar Heights, they should be the one to run the electric line to the new bowling alley, or any other new business *comming* into Lamar Heights, instead of Barton County Co-op." in the minutes of the meeting held on August 8, 1960.

9. State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167; State ex rel. Marcum v. Sappington, Mo. App., 261 S.W.2d 385; McQuillin on Municipal Corporations (3rd Ed.), Vol. 5, §§ 14.10–14.12, pp. 30–36. See also State ex rel. School Dist. of Affton v. Smith, 336 Mo. 703, 709, 80 S.W.2d 858, 861(11); State ex rel. Lovell v. Tinsley, 241 Mo. App. 690, 695–696, 236 S.W.2d 24, 27 (4); annotation 98 A.L.R. 1229.